[No. 3310-2.   Division Two.   March 8, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL ALAN WHEELER, *Appellant.*

*Peter Kram,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, J.—Defendant, Michael Alan Wheeler, appeals from his conviction of first–degree robbery. RCW 9A.56.200(1)(a).[1] The information alleged additionally that in the commission of [the crime] and immediate flight therefrom, the defendant was armed with a deadly weapon, to–wit: a pistol, that being a firearm and invoking the provisions of R.C.W. 9.41.025.

---

[1]RCW 9A.56.200 provides:

"(1) A person is guilty of robbery in the first degree if in the commission of a robbery or of immediate flight therefrom, he:

"(a) Is armed with a deadly weapon; or

"(b) Displays what appears to be a firearm or other deadly weapon; or

"(c) Inflicts bodily injury.

"(2) Robbery in the first degree is a class A felony."

He contends on appeal that the trial court erred by permitting the jury to view a police photograph taken of him the night he was arrested and by refusing to give his requested instruction regarding the lesser–included offense of second–degree robbery. Although we reject defendant's arguments, we do find that sentence was imposed under circumstances indicating a mistaken belief as to the necessity to impose a sentence which, pursuant to RCW 9.41.025, "shall not be suspended or deferred." In the light of the recent case of *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), we remand for possible resentencing.

Early in the evening of September 16, 1977, a robbery occurred at the Tarry Tavern in Tacoma, Washington. Several eyewitnesses testified that an individual, later identified as defendant, entered the tavern, brandished a gun at the bartender, and demanded money. After the gunman took two bags of cash, witnesses saw him leave the tavern and run toward a white van parked on the street downhill from the bar.

Duane Lamp, the other individual involved in the incident, stated that he and Wheeler had been in the area of the Tarry Tavern on September 16, 1977. While defendant went into the tavern for a beer, Lamp walked toward his van which was parked down the street. A few minutes after defendant entered the tavern, Lamp saw him approaching the van, carrying two bags. Although Lamp admitted knowing that defendant had "done something," he agreed to drive defendant away from the area.

The police were called and given descriptions of the two suspects and the get–away vehicle. Defendant and Lamp were arrested a short time later a few blocks from the tavern. The bags, money, and a handgun were recovered. Defendant was charged with the robbery. Lamp, who apparently had no prior knowledge of defendant's plans to commit the robbery, was charged with, and later pleaded guilty to, the crime of "rendering assistance."

Defendant's trial was held on December 12, 1977. John Bailey, the bartender/operator of the tavern, described the

individual who committed the robbery as a white male in his late 20's with a moustache, long hair and gold–rimmed glasses. After Bailey testified that he could not definitely identify anyone in the courtroom as the robber, he was shown a photograph of defendant taken the night of the arrest. Bailey stated that the person pictured in the photograph looked "very similar" to the man who robbed the tavern. The photograph was "identified" as plaintiff's exhibit 19.

Horace Young, another witness to the crime, also testified for the prosecution. He tentatively identified defendant as the robber, but stated that it was hard to be certain because the man with the gun wore a long, shaggy moustache. Apparently, defendant was clean–shaven at the time of trial. Young was not shown exhibit 19.

Officer Manuel Ortiz, one of the arresting officers, identified defendant at trial; but he also stated that defendant's appearance had changed "quite a bit" since the night of his arrest. Exhibit 19 was admitted after Officer James Lohr of the Tacoma Police Department identified it as a photograph he took of defendant as a part of the booking procedure following the arrest.

Defendant was convicted of first–degree robbery. The jury also returned a special verdict finding that he was carrying a firearm during the commission of the crime, pursuant to RCW 9.41.025. The trial court sentenced defendant to confinement for a maximum of 20 years, and defendant appealed to this court.

Defendant's challenge to the admission of exhibit 19 is twofold: (1) He argues that the use of only one photograph for identification purposes is "impermissibly suggestive" and violative of his constitutional right to due process of law; and (2) he maintains that, in any case, it was improper to permit the jury to see a photograph that is obviously a "mugshot." We will discuss these contentions in order.

■ In support of his constitutional arguments, defendant cites a number of cases which discuss the constitutional requirements for pretrial photographic "showups." Courts

are sensitive to the possibility that faulty pretrial procedures might taint a later in–court identification. Accordingly, strict standards have been established to insure that such pretrial showups do not give rise to a substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Nettles*, 81 Wn.2d 205, 500 P.2d 752 (1972). Use of pretrial one–photograph showups is a suggestive procedure, but neither in–court nor out–of–court identifications based on them are per se excluded. Reliability is the linchpin for determining admissibility of identification testimony. *Manson v. Brathwaite, supra.*

Problems presented by use of an in–court photographic "showup" are less acute than those involved in a pretrial procedure. As pointed out in *Anthony v. United States*, 433 F.2d 952, at 953 (9th Cir. 1970), a trial identification, unlike a pretrial procedure, is conducted under the scrutiny of a trial judge, who is able to closely monitor the proceedings. Additionally, defense counsel is free to cross–examine identification witnesses concerning their recollection of the actor's appearance and concerning their belief that the person portrayed in the photograph was the individual who committed the crime. Finally, defense counsel can argue the identification issue to the jury and sensitize the jury to the problems engendered by one–photograph showups. We reject defendant's proposal that one–photograph trial identification procedures be automatically prohibited; and we hold that the use of the police photograph was necessitated by the totality of the circumstances and did not result in irreparable misidentification. *Anthony v. United States, supra. See also Griff v. Fitzharris*, 451 F.2d 151 (9th Cir. 1971).

■ The principal objection to the admission of a "mugshot" is that the identifying marks on this type of photograph often indicate the accused has a prior criminal record. *State v. Bromley*, 72 Wn.2d 150, 432 P.2d 568 (1967); *State v. Butler*, 9 Wn. App. 347, 513 P.2d 67 (1973).

In the case at bench, however, the testimony of Officer Lohr and the date imprinted on the photograph clearly indicate that it was taken the night defendant was arrested for this crime. Although the better practice would have included an effort to edit the "criminal identification material" out of this exhibit, the State's use of the photograph to establish defendant's identity was quite appropriate after it became apparent that his facial appearance had changed considerably between the date of the incident and the time of trial. *See State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968). We find no error in the use of and the admission of exhibit 19.

▇▇ Defendant contends that he was entitled to an instruction permitting the jury to convict him of the lesser–included offense of second–degree robbery (RCW 9A.56-.210) because Bailey's description of the weapon used in the crime did not fit that of the gun produced by the State.[2] We disagree. Second–degree robbery is certainly a lesser–included offense of the crime charged, but the instruction is proper only if supported by the record. *State v. Cozza,* 19 Wn. App. 623, 576 P.2d 1336 (1978). All the eyewitnesses to the crime agree that the individual who committed the robbery was armed. We recognize that a jury may always disbelieve any portion of any witness' testimony (and thus find that the robber was unarmed), but if the defendant would urge as an alternative theory that he committed only "unarmed robbery", some evidence must be presented affirmatively to establish that theory. Defendant was, therefore, guilty of armed robbery or of no crime at all. The trial court did not err in refusing the requested instruction. *See State v. Eaton,* 20 Wn. App. 351, 582 P.2d 517 (1978); *State v. Lewis,* 15 Wn. App. 172, 548 P.2d 587 (1976).

▇▇ Although we are satisfied that the defendant had a fair trial and his conviction should stand, nevertheless, we are compelled to remand the cause to permit the trial court

---

[2]RCW 9A.56.210 provides:

"(1) A person is guilty of robbery in the second degree if he commits robbery.

"(2) Robbery in the second degree is a class B felony."

to reconsider its sentence. The jury's return of the special verdict on the "firearm" issue prohibited the trial court from deferring or suspending the sentence. *State v. Thompson,* 88 Wn.2d 60, 558 P.2d 245 (1977); *State v. Butterfield,* 12 Wn. App. 745, 529 P.2d 901 (1974). It has recently been decided definitively that the firearm enhancement statute cannot be applied when an individual is charged with first–degree robbery. Accordingly, the special verdict entered in this case must be stricken. *State v. Workman, supra.* We, therefore, remand to permit the trial court to exercise discretion in a determination of whether Mr. Wheeler is amenable to probation. It is so ordered.

PEARSON, C.J., and REED, J., concur.