[No. 3655–2. Division Two. December 4, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. CALVIN R. WARD, *Appellant*.

*Mary Ellen Goodwin,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Michael R. Johnson, Deputy,* for respondent.

PETRIE, J.—On February 21, 1978, an armed robbery occurred at the Rodeway Inn in Tacoma. Defendant, Calvin Ward, was arrested, tried, and convicted for his participation in that incident. He appeals from the conviction of robbery in the first degree and the subsequent imposition of a life sentence pursuant to the habitual criminal statute. RCW 9A.56.200; RCW 9.92.090. We affirm the conviction and the entry of the habitual criminal finding, but remand for possible resentencing as required by *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978) and *State v. Wheeler,* 22 Wn. App. 792, 593 P.2d 550 (1979).

Shortly before 1:30 p.m. on February 21, a police radio transmission alerted officers of a report from a Mr. Orphey, the proprietor of a grocery store in Tacoma, that he was then observing, in a car parked outside his store, three men who had previously robbed him. Officer Donald Moore and three other Tacoma police officers responded to the broadcast. Two of the suspects were found in the parked car; and, after it was indicated that the third individual, a black male, was in the grocery store, several of the officers went into the store to continue the investigation.

When the officers entered the store, they encountered five individuals—three black males, including defendant

and Mr. Orphey, a black female, and a white female. All three men were contacted by an officer in order to ascertain their identity. Defendant was approached by Officer Moore. According to the officer, defendant unintelligibly mumbled some name when asked to identify himself and stated that he had come into the store in the company of the black woman who was also on the premises. The officer then asked the woman if she had entered the store with defendant. When the woman denied knowing defendant, Officer Moore resumed questioning him. He told Officer Moore that he had no identification on him and that he did not have a wallet. Because Officer Moore observed a bulge in the pocket of defendant's jumpsuit that appeared to be the size and shape of a wallet, his suspicions were further aroused by defendant's comment. He also feared that the "bulge" might, in reality, be caused by a weapon. Officer Moore finally decided to "frisk" defendant. He removed a wallet from defendant's pocket, opened it, and found a payroll check made out to "Don R. Colli—s" (part of the payee's name had been obliterated). Defendant was transported to the police station along with the other suspects and Mr. Orphey for questioning about the previously reported robbery of the grocery store. He was released later that afternoon.

Some time later, Officer Moore became aware that a payroll check issued to Don R. Collings was one of the items taken during a robbery at the Rodeway Inn in the early hours of February 21. Officer Moore informed Officer Guy Bowen, the police investigator in charge of that robbery, about the check which he had observed in defendant's wallet. Officer Bowen then went to the home of the two victims of the Rodeway Inn incident and showed them a photo array which included a picture of defendant. Both men identified defendant as the robber. Defendant was arrested on February 23 and advised of his *Miranda* rights. Defendant waived his rights and confessed to the Rodeway Inn robbery.

A pretrial hearing was conducted to determine whether defendant made a voluntary and knowledgeable waiver of his Fifth Amendment protections, but no questions of any search and seizure issues under the Fourth Amendment were raised at that hearing or any time prior to trial. At trial, defendant objected to Officer Moore's testimony that he had observed the Colli—s check in defendant's wallet. The trial court considered that objection to be a motion to suppress evidence obtained from the officer's "frisk" of the defendant in the grocery store and conducted a brief hearing out of the presence of the jury. Following the hearing and argument on the question, the court ruled that the evidence was admissible.

Defendant was convicted by jury verdict of first–degree robbery. The jury also determined that he was armed "with a deadly weapon, which was a firearm" during the commission of the offense. The prosecutor then filed a supplemental information alleging that defendant had achieved the status of a habitual criminal. After the jury returned a verdict finding that he was a habitual criminal, defendant was sentenced to life imprisonment. Defendant appeals to this court, challenging both the underlying conviction and the habitual criminal finding.

In his first two assignments of error, defendant argues that his Fourth Amendment right to be free of unreasonable searches and seizures was violated when the officer opened his wallet in the grocery store. Accordingly, he contends that evidence concerning that incident, and the fruit thereof, must be excluded.[1] Both parties to this appeal framed the issue substantially as follows: Did Officer Moore

---

[1]The failure to raise a Fourth Amendment issue prior to trial may constitute a waiver. *State v. Duckett,* 73 Wn.2d 692, 440 P.2d 485 (1968); *State v. Gant,* 6 Wn. App. 263, 492 P.2d 571 (1971); *State v. Coleman,* 2 Wn. App. 982, 471 P.2d 689 (1970). This rule is not applied when an objection is made at trial and it becomes clear from trial testimony that certain evidence was illegally seized. *State v. Robbins,* 37 Wn.2d 431, 224 P.2d 345 (1950), or when the appellate court exercises its discretion to review issues touching on important constitutional protections even in the absence of a proper objection below. *State v. Talley,* 14 Wn. App. 484, 543 P.2d 348 (1975); *State v. Gallo,* 20 Wn. App. 717, 582 P.2d 558 (1978).

exceed his authority under *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) in opening defendant's wallet during a frisk for weapons? *Compare Commonwealth v. Silva,* 366 Mass. 402, 318 N.E.2d 895 (1974); *People v. Collins,* 1 Cal. 3d 658, 463 P.2d 403, 83 Cal. Rptr. 179 (1970); *United States v. Riggs,* 474 F.2d 699 (2d Cir. 1973) *with Taylor v. Superior Court,* 275 Cal. App. 2d 146, 79 Cal. Rptr. 677 (1969). This phrasing of the issue indicates that the prosecution contends that no "arrest" occurred on February 21, but that the warrantless examination of the contents of defendant's wallet can be justified as a natural result of the officer's frisk for weapons. We do not reach that issue, however, because our reading of the record leaves us with no doubt that defendant was arrested by Officer Moore some time after his first conversation with the officer in the grocery store and before he was transported to the police station for questioning concerning the grocery store robbery. *Dunaway v. New York,* 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979).

█ Despite Officer Moore's subjective belief that no arrest occurred and that defendant was merely being "detained," an arrest did occur if defendant's "liberty of movement" was substantially restricted. *Plazola v. United States,* 291 F.2d 56, 60 (9th Cir. 1961). *See also Peters v. New York,* 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968). Defendant himself believed he had been arrested by Officer Moore by the time he was taken to the waiting police vehicle and driven to the station, and we are satisfied that such belief was manifestly reasonable under the circumstances. *Dunaway v. New York, supra.*

█ Although it is not the usual situation, a search incident to an arrest can occur prior to the arrest, so long as sufficient grounds for the arrest existed before the search and seizure was commenced. *State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977); *State v. Brooks,* 57 Wn.2d 422, 357 P.2d 735 (1960). As stated by the court in *Holt v. Simpson,* 340 F.2d 853, 856 (7th Cir. 1965):

When probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant.

*See State v. Hammond,* 24 Wn. App. 596, 603 P.2d 377 (1979); *see also* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.4(a) (1978); Annot., 89 A.L.R.2d 715 (1963). Therefore, the search of defendant's wallet can be upheld so long as Officer Moore had probable cause to arrest defendant for the robbery of the grocery store before the search occurred.

 Probable cause for making a warrantless arrest exists when the facts and circumstances are such as to warrant a prudent or cautious man in believing that the suspect had committed or is committing an offense. *Gerstein v. Pugh,* 420 U.S. 103, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975); *State v. Massey,* 68 Wn.2d 88, 411 P.2d 422 (1966); *State v. Luellen,* 17 Wn. App. 91, 562 P.2d 253 (1977). The officer need not have knowledge of evidence sufficient to establish the guilt of the accused beyond a reasonable doubt. *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *State v. Bellows,* 72 Wn.2d 264, 432 P.2d 654 (1967). Finally, probable cause must be examined in light of the arresting officer's special expertise and training in identifying criminal behavior.

[T]he standard should be, not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious, and prudent officer.

*State v. Todd,* 78 Wn.2d 362, 367, 474 P.2d 542 (1970).

 We are satisfied that Officer Moore had probable cause to arrest defendant in connection with the grocery store robbery. The officer knew that the victim of the crime—obviously an eyewitness—had reported that the three men who robbed him were in a car parked in front of his store. He also knew that one of the suspects, a black

male, had left the car and entered the grocery store. When the officer first encountered defendant, defendant merely mumbled a name and then told the officer that he had no wallet or other identification. In addition, defendant stated that he had entered the store with the black woman—a statement which she controverted. The information supplied to Officer Moore through the radio transmission, his observation of defendant's person and behavior, and the defendant's own evasive and false statements were sufficient to give the officer probable cause to believe that defendant had committed the grocery store robbery. *See State v. Fricks,* 91 Wn.2d 391, 588 P.2d 1328 (1979); *State v. Mustain,* 21 Wn. App. 39, 584 P.2d 405 (1978); *Peters v. New York, supra.* The arrest was valid and the search incident to the arrest was also proper. Defendant's release shortly after his initial arrest does not indicate the officers did not have probable cause to arrest him in the first place. *State v. Teuber,* 19 Wn. App. 651, 577 P.2d 147 (1978).

We will now address defendant's arguments concerning imposition of a life sentence under the habitual criminal statute. Defendant's prior convictions are for second–degree burglary committed in 1971 and for grand larceny committed in 1973. Judgment in each case was pronounced following entry of a plea of guilty by defendant. As his first attack, defendant argues that both prior convictions are unavailable for use in the habitual criminal proceeding because the faces of the judgments do not indicate that defendant was advised of the consequences of a guilty plea. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969); *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976). This contention is simply not supported by the record. The judgments indicate that defendant was advised of his trial rights before his pleas were accepted. The record also demonstrates that counsel for defendant was present at the time each guilty plea was made.

Defendant also maintains that the prosecutor abused his discretion by filing a habitual criminal information against him. We disagree. Defendant's current crime was extremely

violent—during the Rodeway Inn robbery a gun was rammed into the throat of one of the victims. His two prior convictions were for crimes that both had a potential for violence. Under the circumstances, we cannot say that the prosecutor's decision to charge defendant as a habitual criminal was arbitrary and capricious or motivated by a discriminatory intent. Defendant was not denied his rights to due process and equal protection of the law.

Defendant's remaining arguments concerning the imposition of the habitual criminal finding are also without merit.

■ In summary, we affirm both the underlying conviction and the entry of a habitual criminal finding. The special verdict finding that defendant was armed with a "firearm" at the time the incident occurred must, however, be stricken and the case remanded to permit the trial court to exercise its discretion in determining whether Mr. Ward is amenable to probation. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978); *State v. Wheeler,* 22 Wn. App. 792, 593 P.2d 550 (1979). *See also State v. Gibson,* 16 Wn. App. 119, 553 P.2d 131 (1976) which held that a trial court may suspend or defer a sentence entered under the habitual criminal statute. That portion of the judgment which reflects the finding that defendant was "armed with a deadly weapon," RCW 9.95.040, is not affected by this opinion. We, therefore, remand to permit the trial court to exercise discretion in a determination of whether Mr. Ward is amenable to probation. It is so ordered.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied January 14, 1980.

Review denied by Supreme Court March 21, 1980.