[Nos. 45055, 45334. En Banc. January 3, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHNIE WILLIAM SCOTT, ET AL, *Appellants.*

8

*W. Stephen Gregorich* (appointed counsel for appeal), *William N. Goodwin, Thomas M. Baker, Jr.* (of *Muscek, Adams, Baker & Gagliardi*), and *Rodger C. Gustafson* (of *Farr & Gustafson*), for appellants.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

WRIGHT, J.—Appellants Johnie Scott, Roger Benson and Kevin Sample appeal first–degree robbery convictions, raising several questions.

About 1 a.m. on March 25, 1977, the Tacoma business known as "The Office Tavern" was robbed by armed men. Two men entered the tavern. One of the customers in the tavern ran outside when the robbers left and gave police a description on the car, a late–model dark Plymouth, used to depart the scene. A similar vehicle, a black 1968 Plymouth Barracuda, had been used in a robbery a few days before and on that occasion the police had obtained the license number of the car and traced it to a Tacoma address.

Based upon the description of The Office Tavern robbery vehicle, the police immediately acted. Police cars took up checkpoints nearby and on South 12th and K Streets, at places they expected the vehicle to pass when going to that address. About 15 minutes after the robbery the 1968 black Barracuda was sighted and stopped near the corner of South 12th and K Streets.

Appellants were arrested and charged the same day with first–degree robbery. On April 1, 1977, a lineup was held in which Benson and Sample, but not Scott, appeared. Scott was not included because he was not believed to have been inside the tavern at robbery time. Instead, he was believed to have been the getaway–car driver.

Numerous questions are raised by one or more of the appellants. Those questions are considered below.

### PROPRIETY OF ARREST

The only issue urged by all of the appellants is the alleged impropriety of the initial arrest. We affirm the trial court and hold there was probable cause.

The description of the automobile used in the robbery (a dark, late–model Plymouth) was similar to that of the car which was stopped (a 1968 black Barracuda). *See State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970). Moreover, the decision was reinforced by information that a 1968 model year black Barracuda had been used in a robbery a few days earlier. The modus operandi in the earlier robbery was similar and there was substantial evidence linking the 1968 black Barracuda to the earlier robbery. The police had learned the vehicle owner's identity and had gone to his residence to look at the car so it could be identified. One of the officers who assisted in stopping the car had previously identified it.

■ We have often said the probable cause test is one of reasonableness. In *State v. Cottrell,* 86 Wn.2d 130, 131–33, 542 P.2d 771 (1975), we said:

> The standard of probable cause required to justify a warrantless arrest is well recognized, *State v. Gluck,* 83 Wn.2d 424, 426, 518 P.2d 703 (1974), and has often been considered at length. *See, e.g., State v. Poe,* 74 Wn.2d 425, 428–29, 445 P.2d 196 (1968); *State v. Green,* 70 Wn.2d 955, 958, 425 P.2d 913, *cert. denied,* 389 U.S. 1023, 19 L. Ed. 2d 670, 88 S. Ct. 598 (1967). The following quotation from *State v. Todd,* 78 Wn.2d 362, 365, 474 P.2d 542 (1970), summarizes the basic elements of probable cause to arrest without a warrant:
>
> > In order to be justified in arresting without a warrant, an officer must believe and must have good reason to believe that a person has committed or is about to commit or is in the act of committing a felony. Not only must the officer have a real belief that the person is guilty, but that belief must be based upon reasonable grounds. Proper cause for arrest has often been

defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. *State v. Palmer,* 73 Wn.2d 462, 438 P.2d 876 (1968); *State v. Easton,* 69 Wn.2d 965, 422 P.2d 7 (1966); *State v. Miller,* 151 Wash. 114, 275 P. 75 (1929).

*See State v. Gluck, supra; State v. Hughlett,* 124 Wash. 366, 368, 214 P. 841 (1923).

Probable cause is based upon the totality of facts and circumstances within the knowledge of the arresting officer. It is not necessary that the knowledge or evidence establish guilt beyond a reasonable doubt, "for in this area the law is concerned with probabilities arising from the facts and considerations of everyday life on which prudent men, not legal technicians, act." *State v. Parker,* 79 Wn.2d 326, 328–29, 485 P.2d 60 (1971).

The test is one of reasonableness considering the *time,* the *place,* and the *pertinent circumstances. Plancich v. Williamson,* 57 Wn.2d 367, 357 P.2d 693 (1960). The standard of probable cause . . . is to be applied in the light of everyday experience, rather than according to strict legal formulae.

*State v. Baxter,* 68 Wn.2d 416, 420, 413 P.2d 638 (1966). *See Brinegar v. United States,* 338 U.S. 160, 175–76, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949).

Furthermore, the arresting officer's special expertise in identifying criminal behavior must be given consideration.

[P]robable cause for arrest should be examined in the light of the arresting officer's special experience, and . . . the standard should be, not what might appear to be probable cause to a passerby, but what would be probable cause to a reasonable, cautious, and prudent officer.

*State v. Todd, supra* at 367.

Considering all of the facts and circumstances the action of the police was reasonable. The trial judge said in his oral opinion: "[I]t never ceases to amaze me that the police have the intuition to place themselves some place where their professional judgment tells them the defendants or the suspects might go by and, sure enough, the suspects did go

by." We find the arrest was proper. There is no merit in appellants' contention that it was not.

## LINEUP VALIDITY

Appellants Benson and Sample challenge the lineup procedure for two reasons. Benson objects because different colors of ski masks were used in the lineup. Sample objects that Scott was not in the lineup.

Ski masks of different colors were used because it was impossible to find six identical masks in Tacoma. It is apparent that on April 1, 1977, the skiing season was drawing to a close so retail stores probably did not have large stocks of ski wear.

There was no attempt to use the differing masks for any improper purpose. Three men wore identical black ski masks and three wore identical red masks. The suspects wore different colors; Sample had red and Benson had black. All persons in the lineup were of similar appearance, were dressed identically, and performed the same movements. Thus, the lineup conformed with standards approved by the United States Supreme Court in *United States v. Wade,* 388 U.S. 218, 236 n.26, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967).

■ We believe the statement in *State v. Christianson,* 17 Wn. App. 264, 268, 562 P.2d 671 (1977) is applicable here. There the court said:

The existence of irreparable prejudice to an accused from a suggestive identification procedure is a factual question, to be determined case by case from the totality of circumstances. We conclude the totality of circumstances surrounding the present pretrial lineup and in—court identification were not so suggestive and conducive to misidentification as to amount to a denial of due process. Evidence arising from the identification procedure was properly admissible, for it was not derived from a tainted source.

(Footnote omitted.)

Sample's objection is wholly without merit and is not supported by citation of authority. Scott was not in the

lineup because he was not alleged to have been in the tavern so he could not be seen by any of the witnesses. No purpose would be served by his presence in the lineup.

We affirm the trial court on the lineup issue.

## ADMISSION OF PHOTOGRAPH

■ Appellant Sample objects to the admission of a photograph of the "mugshot" type from which all identifying information had been removed. The photograph is no more than a picture of a man wearing overalls, with nothing to suggest it was a police photograph. Its admission was necessary and relevant because Sample had materially changed his appearance by a haircut between arrest and trial time. Under these circumstances the use of "mugshots" has been approved in *State v. Wheeler,* 22 Wn. App. 792, 593 P.2d 550 (1979) and *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968). The use of the photograph was permissible.

## COMMENT ON FAILURE TO TESTIFY

During closing argument the deputy prosecuting attorney said: "The only defendant we heard from was Mr. Benson, Mr. Baker's client." Appellants Sample and Scott claim this is a proscribed comment on their failure to testify.

■ This claimed error must be viewed in light of the surrounding circumstances. The subject which the deputy prosecuting attorney was discussing in his argument was the credibility of a state's witness, Ms. Cserepes. He was alluding to the argument of Mr. Baker in which Baker had questioned the credibility of Ms. Cserepes, and had relied on the testimony of his own client, Benson. In that context the words used were not intended as a comment on the failure of Scott and Sample to testify, and could not reasonably be so understood by the jury. An examination of the record shows adequate reason to mention both Mr. Baker and his client, Benson, and to question the latter's credibility. The statement was not "of such character that the jury would naturally and necessarily accept it as a comment on defendant's failure to testify." *State v. Crawford,*

21 Wn. App. 146, 152, 584 P.2d 442 (1978); *State v. Bennett,* 20 Wn. App. 783, 786, 582 P.2d 569 (1978).

We desire, however, to make it absolutely clear that nothing said herein is to be construed as approval of the language used. We feel the public interest would be much better served if such language were not used. By avoiding such comments extensive and expensive appellate review might be prevented. We strongly recommend that such language Never be used by prosecuting attorneys. *See State v. Mello,* 79 Wn.2d 279, 484 P.2d 910 (1971).

### Enhanced Penalty for Being Armed

Can a person convicted of first–degree robbery also receive the enhanced penalty for being armed with a firearm? This question does not apply to Scott since the jury found he was unarmed.

■ We answered this question in *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). *See also State v. Wheeler,* 22 Wn. App. 792, 593 P.2d 550 (1979). Accordingly, we hereby strike from the judgment and sentence of appellants Benson and Sample any enhancement of sentence imposed in accord with RCW 9.41.025. We remand for resentencing in accordance herewith. Having done so it is not necessary to further discuss the assignment of error.

### Failure To Instruct on Lesser Included Offense

Appellant Benson objects to the trial court's failure to give an instruction on a lesser offense which he claims is included within the robbery charge.

■ Benson did not request any instruction on a lesser included offense, nor did he take exception to the court's failure to give such an instruction. It is not argued that any constitutional right is involved. In the absence of either a violation of a constitutional right or a request to instruct there can be no error assigned on appeal for failure to give an instruction. *State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974); *State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972).

The final three claimed errors relate only to Benson and the habitual criminal charge.

### CONVICTION WHILE UNDER COMMITMENT

Benson contends the use of a robbery conviction which occurred while he was under commitment to a state hospital was improper.

■ Benson has twice raised this question unsuccessfully in the Court of Appeals. See cause Nos. 3077–II and 3216–II. The record shows the matter was fully considered as shown by the following quotation from the order of Chief Judge Pearson in cause No. 3077–II.

> Petitioner's claim that he was incompetent to stand trial in 1960 is based solely on the fact that in 1955 he was committed to Western State Hospital and diagnosed as a schizophrenic. A probation officer's presentence report, dated July 7, 1960, shows that in March of 1960, petitioner was examined by Dr. Harold Johnston who concluded that petitioner was not psychotic and was fully capable of participating in his own defense. A prior commitment to a mental institution is not determinative of present competancy [sic] to stand trial. *State v. Tate,* 1 Wn. App. 1, 485 P.2d 904 (1969). Dr. Johnston saw petitioner shortly before the trial and concluded that he was sane. This conclusion is generally supported elsewhere in the report. Petitioner apparently did not raise the competency issue in superior court. In view of these factors it is difficult to fault petitioner's attorney for failure to plead incompetency to stand trial.

This assignment of error lacks substantial merit.

### CONVICTION WHEN NOT REPRESENTED BY COUNSEL

Appellant Benson contends one of the convictions relied on for the habitual criminal charge was obtained when he was not represented by counsel. His claim is refuted by the record, which shows he was represented. Further, county fiscal records show that Robert Skidmore was the attorney and he appeared at the sentencing and again at the signing of a corrected sentence. This claim of error is wholly without merit.

## INSTRUCTION RELATIVE TO PRESENT CONVICTION

Benson contends the court improperly instructed the jury in the habitual criminal proceeding by mentioning the present conviction in an instruction even though the sentence had not yet been imposed.

Instruction No. 7 correctly informed the jury that the habitual criminal charge is supplemental. When read together with instruction No. 4 the jury was correctly informed of the background and reason for the habitual criminal charge.

Instruction No. 7 read:

> You are instructed that prior to the present proceedings in this case, the defendant, Roger Brian Benson was charged with, and convicted of, a felony in this Court, to-wit: Robbery in the First Degree.

Instruction No. 4 read:

> In the proceedings now before this Court, the defendant, Roger Brian Benson is not charged with nor is he being tried for the commission of a crime. The only object of this proceeding is to ascertain whether or not the defendant has previously been convicted of the crimes set forth in the Supplemental Information herein, hence, the facts to be decided upon by you in this case are as follows:
>
> 1. Was this defendant, on or about the 13th day of July, 1960, convicted of the crime of Robbery, in the Superior Court of the State of Washington, in and for Pierce County?
>
> 2. Was this defendant, on or about the 12th day of June 1964, convicted of the crime of Assault in the First Degree, in the Superior Court of the State of Washington, in and for Pierce County?
>
> 3. Was this defendant, on or about the 7th day of February, 1969, convicted of the crime of Robbery, in the Superior Court of the State of Washington, in and for Yakima County?
>
> If you are satisfied beyond a reasonable doubt as to the truth of each of the above facts, then you will answer "Yes" as to each of the questions later referred to herein and which will be a part of your verdict in this case.

But, if as to any of the above facts, you are not satisfied beyond a reasonable doubt, you will then answer "No" to such questions.

There is no error in these instructions.

Having fully considered the assignments of error from each of the appellants, we affirm the trial court with the exception noted that the enhanced penalty for being armed is deleted from the Benson and Sample sentences.

UTTER, C.J., ROSELLINI, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., and HUNTER, J. Pro Tem., concur.