[No. 5013–7–II.   Division Two.   March 3, 1983.]

THE STATE OF WASHINGTON, *Respondent*, v. ERNEST RAYMOND GRINIER, *Appellant*.

*E. Bronson Potter,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *Roger A. Bennett, Deputy,* for respondent.

PETRICH, C.J.—Defendant appeals his conviction of unlawful possession of a controlled substance found pursuant to a warrantless search of a locked suitcase taken from the back seat of his automobile. Because the search was not justified by any exigent circumstances, and because it was not an "automobile exception" search allowed by *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), we hold that the evidence should have been suppressed. Accordingly, we reverse.

In July of 1979, to avoid prosecution, one Claude Shoemaker told law officers from Portland, Oregon, and Van-

couver, Washington, that approximately every 2 weeks, he, the defendant, and Robert Irvin would receive by means of a California licensed pickup truck a 100– to 500–pound shipment of marijuana from Los Angeles. Later that summer, Sergeant Marosi of the Vancouver Police Department was advised by another informant that a shipment of marijuana would be coming into the Portland–Vancouver area around August 22, 23, or 24. A surveillance team consisting of officers from the Vancouver Police Department, Clark County Sheriff's Office, and Portland Police Bureau was assembled; at 4 p.m. on August 22, part of this team began surveillance of Irvin's residence in Portland.

Deputy Harrison observed the suspected California "delivery truck" and a red Austin parked at Irvin's residence. Around 9:10 p.m., Shoemaker was observed arriving at and entering Irvin's residence, and then leaving approximately 10 minutes later. Shoemaker later telephoned the police to say that the marijuana had arrived or "was near" and that Irvin offered to get marijuana for him if he paid an outstanding debt.

Soon thereafter, Irvin drove to the Portland airport where he picked up a man later identified as Larry Falls, who carried a suitcase. Defendant, meanwhile, was observed arriving at Irvin's residence carrying a suitcase. Irvin soon returned with his passenger. Immediately after Irvin's return at approximately 10:30 p.m., Falls and defendant each put his suitcase in the back of defendant's Torino and drove off. Defendant's car was followed by a mobile surveillance unit. Within a few minutes, two other individuals also left Irvin's residence, placed a suitcase in the red Austin and drove off.

Although Deputy Harrison thought there was probable cause to believe marijuana was in Irvin's residence, he also thought it necessary to get a search warrant to enter and search the Irvin residence to prevent further disposal. Harrison relayed these opinions to Sergeant Marosi who agreed that prompt confirmation of the presence of marijuana in defendant's suitcase would be necessary in order to

apply for a warrant to search Irvin's residence. Sergeant Marosi then gave orders to stop defendant's car.

Defendant's car was soon stopped in Clark County, Washington. Defendant had been driving, a young woman and child were in the front passenger seat, and Falls was in the back seat. Deputy Reese immediately removed the two suitcases from the back seat of the car and asked for the combination to defendant's locked suitcase. After defendant refused to help, Deputy Reese broke open defendant's suitcase and inside found 15 plastic bags, each containing approximately 1 pound of marijuana. Defendant was then arrested. Information of this search was included in an affidavit submitted to obtain a search warrant for Irvin's residence. This search was executed several hours later, in the early morning hours of the following day.

Because the parties stipulated to the above mentioned facts, and because they were incorporated into the suppression hearing's findings of fact which are not challenged, we treat them as verities.

After defendant's motion to suppress the evidence found in the suitcase was denied, defendant was found guilty.

■ On appeal, defendant challenges the court's denial of his motion to suppress the evidence found in his suitcase. First, he claims the court erred in concluding that the police had probable cause to believe contraband was in his suitcase which thereby justified the stop of his car and seizure of his suitcase. However, because this assignment of error is supported by neither argument nor authority, we will not consider it. *State v. Carlson,* 27 Wn. App. 387, 618 P.2d 531 (1980).

Second, he claims the court erred in concluding that exigent circumstances excused the requirement of first obtaining a warrant to search his suitcase. The court made the following conclusion of law:

> Based upon the fact that Deputy Harrison had observed what appeared to be a further or continuous dissemination of Marihuana from the Irvin residence following the departure of the green Torino, the officers

involved were justified in acting as promptly as possible to confirm the presence of Marihuana, in order to obtain a search warrant for the Irvin residence, in order to prevent further dispersals of Marihuana.

■■ Our inquiry must be whether the facts demonstrate exigent circumstances which come within an exception to the general warrant requirement. Any exceptions to the warrant requirement are to be drawn carefully and interpreted jealously, with the burden placed on the party asserting the exception. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Such exceptions are allowed when the societal costs of obtaining a warrant outweigh the reasons for prior recourse to a neutral magistrate. *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). If, for example, circumstances either place the police in danger or create a risk of loss or destruction of evidence, a warrantless search is permissible. *Arkansas v. Sanders, supra.*

*United States v. Tramunti,* 513 F.2d 1087 (2d Cir. 1975) is the State's sole authority for the argument that an exigent circumstance was created by the need to immediately confirm the presence of marijuana in Irvin's residence in order to obtain a search warrant for the Irvin residence. We find *Tramunti* unpersuasive. Its passing statement that proof of contraband found in luggage seized from a car "may have led to further police action back at 1906 Brooklyn Ave." is dicta; the search was upheld under an "automobile exception" analysis. Also, *Tramunti* has not been cited in any other case as an example of an exigent circumstance.

We do, however, find some guidance in those cases which hold that the potential destruction of evidence in a dwelling created an exigent circumstance justifying a warrantless search of that dwelling. *E.g., United States v. Flickinger,* 573 F.2d 1349 (9th Cir. 1978); *United States v. Curran,* 498 F.2d 30 (9th Cir. 1974). *Cf. United States v. Allard,* 600 F.2d 1301 (9th Cir. 1979) (no exigent circumstances supported warrantless search of motel room). In these cases,

the searches were upheld only if the police had good reason to believe the evidence would be destroyed unless they acted without a search warrant. Thus, it became incumbent upon the police to articulate those facts supporting their belief that the evidence was in potential danger of destruction.

Here, even if these cases possibly support the search of a vehicle made in order to prevent the destruction of evidence at a residence, the State has not made a credible showing of any facts supporting its belief that marijuana in Irvin's residence would soon be completely dispersed or destroyed. Prior to the stop of defendant's vehicle, none of the individuals under surveillance were aware of any imminent threat from police officers. Hence, there was little possibility they would destroy the marijuana for fear of its discovery by the police. Also, except for the departure of defendant's vehicle and the red Austin, no other activity was reported at Irvin's residence. Even if we assume the police had probable cause to believe defendant departed with some marijuana, they could only speculate that the occupants of the Austin also left with marijuana. Moreover, one of the key members of this drug ring, Irvin, had not left his residence.

Because there was no necessity to search defendant's suitcase without a warrant, and because the State cannot show that the marijuana was in danger of disappearing, we are left with the definite and firm conviction that the court erred in finding exigent circumstances.

Finally, we must consider the effect of *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), which held that expectations of privacy in containers within vehicles give way to the authority of searches authorized by *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925). Significantly, *Ross* distinguished itself from nonautomobile cases such as *Arkansas v. Sanders, supra,* and *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct.

2476 (1977),[1] where the police had probable cause to believe a container held contraband *prior* to its being placed in an automobile. *United States v. Ross, supra* at 817 n.22.

We therefore read *Ross* to say that where the police had probable cause to believe contraband was in luggage prior to its being placed in an automobile, and where the suspected locus of contraband is the luggage being transported at the time of the stop, rather than the automobile in which it was being carried, the relationship between the automobile and the contraband is purely coincidental, and police may not use the automobile exception to justify a search of luggage. *United States v. Ross, supra* at 812–14.

Here, the facts indicate that if the police actually had probable cause to believe contraband was in defendant's suitcase, such probable cause arose before defendant placed it in his automobile. After defendant was stopped, Deputy Reese immediately grabbed the suitcase from the back seat and demanded the combination. From the time defendant exited Irvin's residence until the luggage was opened, the police focused their suspicion and search solely on defendant's suitcase.

Differences from the fact patterns in *Chadwick* and *Sanders* exist, too. While the taxi was followed for several blocks in *Sanders,* police followed defendant's automobile from Irvin's residence in Portland, Oregon, to Clark County, Washington. In both *Chadwick* and *Sanders,* the pieces of luggage were placed in an automobile's trunk, thereby precluding the defendants from tampering with the evidence. By contrast, defendant's suitcase was apparently on the back seat next to Falls. Also, none of the practical difficulties associated with the detention of a vehicle on a public highway that made the *Carroll* search reasonable were apparent in *Sanders,* since the officers had no interest in detaining the taxi or its driver. *United States v. Ross,*

---

[1] In *Chadwick,* the government abandoned its argument based on the "automobile exception" of *Carroll* after the lower court refused to apply it.

*supra* at 813 n.18. Here, such practical difficulties were definite realities.

These differences, however, do not demand that we treat this search as a *Carroll* search. Practically all the factual differences that might make this search less like those in *Chadwick* and *Sanders* were created because the police waited as long as they did in deciding to stop defendant's automobile. Because *Sanders* did not allow officers to create a *Carroll*–type situation by biding their time, neither will we allow it here.

Moreover, because the mobile surveillance team did not report any activity suggesting that defendant or Falls attempted to remove evidence from the suitcase either while they were following defendant's car or after they stopped it, the mere fact that the suitcase was on the back seat is not enough to invoke a *Carroll*–type analysis.

We therefore conclude that because this was not an "automobile exception" case, the police were not entitled to search defendant's suitcase without a warrant.

Because no exception to the warrant requirement supported this warrantless search, the evidence should have been suppressed. We reverse.

WORSWICK, J., concurs.

REED, J. (dissenting)—I respectfully dissent because the trial judge's refusal to suppress can be sustained on another theory,—albeit one unarticulated by the State. In *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the warrantless search of the passenger compartment of an automobile and any containers found therein was held valid under the Fourth and Fourteenth Amendments as a contemporaneous incident of a lawful custodial arrest of the vehicle's occupants. The term "containers" was held to include, *inter alia,* "luggage, boxes, bags, clothing, and the like." *New York v. Belton,* 453 U.S. at 460 n.4. In essence, in the context of automobile interior searches, the *Belton* Court extended the "leap and lunge"

area of *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969).

Here, based upon reliable information from an informant, and bolstered by direct observation of corroborative activity, the police had probable cause to arrest Grinier for possession of marijuana, *i.e.,* the contents of the suitcase. Had he been placed under arrest, the search then could have been conducted as being incident thereto. *State v. Helfrich,* 33 Wn. App. 338, 656 P.2d 506 (1982). Although the search took place prior to the arrest, the two events were sufficiently contemporaneous to fall within the *Belton* rule. A search incident to an arrest may occur prior to the arrest, so long as sufficient and independent grounds for the arrest exist before the search and seizure is commenced. *State v. Ward,* 24 Wn. App. 761, 603 P.2d 857 (1979); 2 W. LaFave, *Search and Seizure* § 5.4(a) (1978).

It may be argued that, because the officers did not intend to arrest Grinier, their only purpose being to seize and open the suitcase in order to establish the presence of marijuana in the house, that a different or contrary result is dictated. I do not think so. Because there were sufficient and independent grounds for Grinier's arrest prior to the search, the motives or intentions of the officers are not relevant to the issue of whether there has been a constitutional violation.

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, *viewed objectively,* justify that action.

(Italics mine.) *Scott v. United States,* 436 U.S. 128, 138, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978). *See also Terry v. Ohio,* 392 U.S. 1, 24 n.22, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), which also emphasizes the objective standard for determining the reasonableness of a search or seizure.

Finally, it should be noticed that neither *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977) nor *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979), requires suppression of Grinier's

contraband. In *Chadwick,* the search of the footlocker was not conducted until long after defendants had been taken into custody and so could not be said to be "incident to the arrest." *New York v. Belton,* 453 U.S. at 462. In *Sanders,* the theory of search incident to arrest was not considered, the Court noting it probably would not have been applicable because "[I]t appears that the bag was not within his 'immediate control' [in trunk of taxi] at the time of the search." *Arkansas v. Sanders,* 442 U.S. at 763 n.11.

I cannot accept the thesis that, merely because the officers—having ample probable cause to do so—did not immediately advise him that he was under arrest, Grinier's constitutional rights were violated by a search of his suitcase.

I would affirm.