FILED
COURT OF APPEALS
DIVISION II

2015 FEB 10 AM 8: 54

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44382-1-II |
| Respondent, | |
| v. | |
| DEVON M. DANIELS, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. — Devon Daniels appeals his convictions of second degree burglary and first degree theft. We hold that (1) the trial court did not err when it dismissed a potential juror for cause, (2) the trial court did not err when it admitted Daniels's booking photographs into evidence, and (3) there was sufficient evidence to support Daniels's burglary conviction. We also reject Daniels's statement of additional grounds (SAG) claims challenging the trial court's refusal to provide a lesser included jury instruction and arguing that the trial court should have excluded the victim's testimony because he lied to the 911 operator. Accordingly, we affirm Daniels's convictions.

## FACTS

On June 11, 2012, Mark Friesman, the owner of a convenience store in Tacoma, placed a bank deposit bag containing store receipts totaling over $7,000 in a locked desk drawer in his office. Later, the store cashier gave Daniels permission to use the private store bathroom. The

door to Friesman's office could be accessed only through the bathroom. According to Friesman and the clerk, the office door was locked.

When Friesman saw Daniels leave the bathroom, he immediately went into the bathroom and noticed that the office door was ajar, his desk drawer was open, and the bank deposit bag was gone. He chased after Daniels, but Daniels ran across the street and disappeared. Friesman and two store patrons later went looking for Daniels, and found him walking behind a local business. A police officer searched a residential area where Friesman had seen Daniels walking and discovered scattered one dollar bills and a jacket. Another officer then searched the area and recovered the stolen bank deposit bag. The State charged Daniels with second degree burglary and first degree theft.

During jury voir dire, juror 18 stated that she had witnessed the police do a lot of things that were not right, and therefore she could not be fair and impartial toward police officers. She stated: "I don't believe anything coming out of their mouth." Report of Proceedings (RP) (Dec. 10, 2012) at 79. Upon further questioning, juror 18 stated that she could be fair and impartial. However, she also stated that law enforcement officers would "have to really prove their case" for her to believe them because of her observing things that were not right. RP (Dec. 10, 2012) at 104. She agreed that she would hold police officers to a higher standard of proof and would need "100 percent proof" in order for her to believe the testimony of police officers. RP (Dec. 10, 2012) at 106. She also admitted that if she were the prosecutor she would not want someone like her on the jury.

Following this examination, the State moved to dismiss juror 18 for cause. The trial court granted the State's motion over Daniels's objection.

2

During trial, the State sought to introduce Daniels's booking photographs taken after his arrest. The State reasoned that because Daniels had substantially changed his appearance, the photographs could help identify him as the person seen on the convenience store video surveillance tapes. Daniels objected, arguing that there was already testimony that he had been arrested and booked into jail and therefore the photographs were unnecessary to prove any contested issue. The trial court allowed the State to introduce the photographs.

Daniels requested a lesser included instruction of criminal trespass on the burglary charge. The trial court denied the instruction, finding that there was no evidence to support it.

The jury found Daniels guilty of both charged offenses. Daniels appeals.

## ANALYSIS

A.    DISMISSING JUROR FOR CAUSE

Daniels argues that the trial court denied him his right to an impartial and indifferently chosen jury when the trial court dismissed juror 18 for cause. We disagree.

1.    Legal Principles

Both the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington Constitution guarantee criminal defendants the right to trial by an impartial jury. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). Either party may exercise this right by moving to dismiss any prospective juror for cause where the juror shows actual bias. RCW 4.44.130, .190. A juror possesses actual bias where he or she evidences a "state of mind . . . which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights" of the party challenging the potential juror. RCW 4.44.170(2).

We review a trial court's decision on a challenge for cause for an abuse of discretion. *Davis*, 175 Wn.2d at 312. We give great deference to the trial court because of its ability " 'to observe the juror's demeanor [during voir dire] and, in light of that observation, to interpret and evaluate the juror's answers to determine whether the juror would be fair and impartial.' " *Id.* (quoting *State v. Gentry*, 125 Wn.2d 570, 634, 888 P.2d 1105 (1995)).

2.    Dismissal of Juror 18 For Cause

Juror 18 initially stated that she could not believe anything that police officers said because she had seen the police do things that were not right, and that this would impact her ability to be fair and impartial. This statement was sufficient to support a for cause dismissal based on actual bias under RCW 4.44.130 and RCW 4.44.170(2).

Daniels argues that during subsequent questioning, juror 18 was rehabilitated because she stated that she could be fair and impartial. But the State continued its questioning after juror 18 said she could be fair, and Juror 18 stated that if a police officer was testifying she would have a higher standard of proof. She stated that there had to be 100 percent proof in order for her to believe a police officer.

The record indicates that juror 18 was not able to set aside her personal experiences and render a verdict based on the law and facts presented at trial. The trial court had the benefit of observing and questioning this potential juror, and decided that dismissal was appropriate. We hold that this decision was reasonable based on juror 18's comments.

3.    *Batson* Claim

Daniels argues that he had the right to trial by a jury that is representative of the community. He cites *Batson v. Kentucky*, in which the United States Supreme Court held that a

4

party cannot exercise a peremptory juror challenge on the basis of race. 476 U.S. 79, 89, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). However, Daniels presents no argument or even allegation that juror 18 was dismissed because of her race, and does not provide reference to anything in the record that would support a *Batson* challenge. Therefore, we need not address *Batson*.

Daniels further argues that the jury was not indifferently chosen. However, there is no indication in the record that juror 18 was dismissed for any reason other than her voir dire responses, which demonstrated that she would not be able to render a fair and impartial verdict.

We hold that the trial court did not abuse its discretion in dismissing juror 18 for cause.

B.     ADMISSION OF BOOKING PHOTOGRAPHS

Daniels argues that the trial court erred in allowing the State to admit his booking photographs. He argues that this created a prejudicial inference of criminal propensity and that the booking photographs served no substantive purpose in proving the identity of the perpetrator. We disagree.

We review a judge's rulings on the admission of evidence for abuse of discretion. *State v. Ruiz*, 176 Wn. App. 623, 634, 309 P.3d 700 (2013), *review denied*, 179 Wn.2d 1015 (2014), *cert. denied*, 135 S. Ct. 69 (2014). A court abuses its discretion when its decision is based on untenable grounds or reasons. *Id.* Nonconstitutional error is not prejudicial unless, within reasonable probabilities, the error materially affected the trial outcome. *State v. Tharp*, 96 Wn. 2d 591, 599, 637 P.2d 961 (1981).

The State may introduce a defendant's booking photograph when the perpetrator's identity is a disputed issue at trial, particularly when the defendant materially changes his appearance between his arrest and his trial. *State v. Scott*, 93 Wn.2d 7, 13, 604 P.2d 943 (1980).

Daniels's case is similar to that in *State v. Rivers*, 129 Wn.2d 697, 712, 921 P.2d 495 (1996), where the court held that admitting the defendant's booking photograph had a proper purpose:

> Because Defendant Rivers raised the issue of identity during opening statements, the photograph of the Defendant on the day of the crime was relevant as it tended to show that the victim's description to police matched the man arrested shortly after the robbery. The admission of the photo was not prejudicial because the jury knew the Defendant was arrested for the crime on which he was being tried, and the jury would reasonably have been aware that a booking procedure, including photographing the Defendant, would have existed.

*Id.*

Here, the only issue at trial was the perpetrator's identity. The State showed the jury the store's surveillance videos and several witnesses identified Daniels as the perpetrator. The booking photographs showed Daniels's appearance at the time of the offenses. And because Daniels changed his appearance after his booking and before trial, as in *Rivers* the photographs were material and not prejudicial. *See also State v. Tate*, 74 Wn.2d 261, 267, 444 P.2d 150 (1968) (photograph properly admitted because witness had identified defendant from photograph and defendant had changed his appearance between his arrest and his trial); *State v. McCreven*, 170 Wn. App. 444, 485, 284 P.3d 793 (2012) (booking photograph is not necessarily prejudicial); *State v. Wheeler*, 22 Wn. App. 792, 796-97, 593 P.2d 550 (1979) (because photograph was taken at time of arrest, it did not show criminal propensity and it was properly admitted to show identity).

We hold that the trial court did not abuse its discretion in admitting Daniels's booking photographs.

C.     SUFFICIENCY OF THE EVIDENCE AS TO BURGLARY

Daniels argues that the State failed to prove that he committed second degree burglary. Specifically, he argues that the evidence did not show that he entered or remained unlawfully in the store office with intent to commit a crime therein as required under RCW 9A.52.030(1). He claims that the evidence did not show that he was prohibited from entering the office. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Rose*, 175 Wn.2d 10, 14, 282 P.3d 1087 (2012). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* Credibility determinations are made by the trier of fact and not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

The trial court's unchallenged instruction defined entering and remaining unlawfully: "A license or privilege to enter or remain in a building that is only partly open to the public is not a license or privilege to enter or remain in that part of the building that is not open to the public." Clerk's Papers at 248. The testimony at trial demonstrated that Daniels did not have a license or privilege to enter the office. Although Daniels had permission to enter the bathroom, he exceeded that privilege when he opened the locked office door. Further, there was clear evidence that Daniels entered the office. The video surveillance tapes show Daniels in the office, reaching over the desk. He also left his coffee cup on the desk.

We hold that there was sufficient evidence to support Daniels's burglary conviction in that he entered the office unlawfully (without license or privilege) with an intent to commit a crime therein.

D.    SAG CLAIMS

1.    Lesser-Included Jury Instruction

Daniels claims that the trial court should have given his proposed lesser included instruction on criminal trespass for the second degree burglary charge. We disagree.

A defendant is entitled to a lesser included instruction only if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong), and (2) the evidence in the case supports an inference that only the lesser crime was committed (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). The defendant must establish both the legal and factual prongs in order to have a lesser included instruction given at trial. *Id.*

For a second degree burglary conviction, RCW 9A.52.030 requires the State to prove that the defendant entered or remained unlawfully in a building other than a vehicle or a dwelling with the intent to commit a crime against a person or property in the building. For a first degree criminal trespass conviction, RCW 9A.52.070 requires the State to prove that the defendant knowingly entered or remained unlawfully in a building.

The legal prong is met here because first degree criminal trespass is a lesser included offense to a charge of second degree burglary. *State v. Soto*, 45 Wn. App 839, 841, 727 P.2d 999 (1986). However, the factual prong is not met here because there was no evidence that Daniels committed only the lesser offense. There is no reasonable view of the evidence that Daniels

simply went into the office to look around without intending to commit a crime. Daniels opened a locked door to the office, rummaged through the owner's desk, opened a locked drawer, and took the bank deposit bag containing the store receipts and money. The surveillance videos support this as does the evidence linking Daniels to the bank deposit bag found several blocks away. The only conclusion that can be drawn from the evidence is that Daniels went into the office with the intent to commit a crime.

We hold that the trial court did not err in denying Daniels's request for a lesser included instruction.

### 2. Witness Credibility

Daniels argues that the trial court should have excluded Friesman as a witness because he lied to the 911 operator when he said that Daniels had pushed him when leaving the store. Friesman explained during trial that he exaggerated what had happened because he had learned from previous situations that if you want the police to prioritize your case, you have to make it seem more urgent. He admitted at trial that Daniels did not push him and that he did not recall telling the reporting police officers that Daniels pushed him.

But Friesman's false statement to the 911 operator did not provide the basis for the trial court to completely exclude Friesman as a witness. Daniels used Friesman's statements in his defense to show that Friesman tended to exaggerate the truth for his own purposes. As a result, his truthfulness with the 911 operator was a matter for the jury to consider in assessing his credibility. *See State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990) (this court does not assess the credibility of witnesses). We reject Daniels's claim.

44382-1-II

We affirm Daniels's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

JOHANSON, C.J.

LEE, J.