[No. 743-2.    Division Two.    July 17, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. GERALD LEE BUTLER, *Appellant*.

*Harold E. Winther* (of *Combs, Small & Kucklick*), for appellant.

*Ronald L. Hendry, Prosecuting Attorney*, and *Joseph D. Mladinov, Special Counsel*, for respondent.

PETRIE, J.—The defendant has filed a notice of appeal from judgment and sentence imposed following jury verdicts of guilty to all three counts in an information which charged him with the crimes of first-degree assault, second-degree assault, and robbery.

In his brief, the defendant has not set forth any specific assignments of error. Rather, he has indicated that there are three "questions presented on appeal", which he has identified as follows:

1. Whether in a criminal prosecution, it is prejudicial error to allow a police photograph, evidencing a prior criminal record, to be used ostensibly as a means of identifying the accused and to permit the admission of such photograph into evidence, where no effort is made to secrete its origin or to correlate the photographic portrayal with the actual appearance of the accused at the time of the occurrence?

2. Whether it is grossly and erroneously prejudicial, where, under the guise of impeachment, one criminally accused is asked if a prior misdemeanor conviction stemmed from a more serious charge or accusation?

3. Whether the state's burden, in a criminal prosecution, of overcoming the presumption of innocence beyond a reasonable doubt, is subject to compromise or mitigation through instructional language tending to emphasize guilt, and encouraging above all else the attainment of unanimity among the several jurors?

Notwithstanding the defendant's failure to comply with the provisions of CAROA 43 and CAROA 42 (g) (1) (iii), we have searched the record in an attempt to identify the specific errors which the trial court is purported to have committed, because the "questions presented" all relate to the defendant's constitutionally guaranteed right to a fair trial. *See State v. Peterson*, 73 Wn.2d 303, 438 P.2d 183 (1968).

Insofar as we are able to discern from the record, the first "question" asserts that the trial court committed prejudicial error by admitting exhibit No. 5 into evidence. That

exhibit is a series of six photographs, each showing a front and profile view of a Caucasian, male adult. The source of the exhibit is the police files of the Tacoma Police Department. Each picture was taken when the individual was "booked." When introduced into evidence all identifying names and numbers were severed from the photographs, including the telltale chain which is ordinarily draped around the arrested person's neck to hold the plaque in which names, numbers and dates are inserted. Accordingly, as we now examine these exhibits, we have no way of ascertaining the date on which they were taken nor do we have any way of knowing which picture identifies the defendant. We can ascertain from the context of the record that one of the six photographs does identify the defendant and that it was taken some time prior to his arrest for the crimes involved in this appeal. The preparation of the exhibit prior to its admission meticulously followed the procedure approved in *State v. Tate,* 74 Wn.2d 261, 444 P.2d 150 (1968).

The real basis for this "assignment of error" appears to be that despite the court's effort to eliminate all extraneous means of identifying the source of the photographs, they still remain noticeably what they really are—"mugshots." Their use in this case, the defendant contends, tended to "create in the collective mind of the jury a general attitude of ill will and suspicion in its assessment of Gerald Lee Butler." We must concede the basic premise—to an average observer, the ordinary mugshot continues to look like a mugshot no matter how it is subsequently trimmed or spruced. In short, the defendant's argument continues, his credibility or lack of it was effectively but improperly presented to the jury by action of the prosecution. While this topic might well present an appropriate focal point for rumination in some subsequent appeal, in the case at bench the defendant's credibility and general reputation for honesty were presented as jury issues by his own actions. The defendant testified in his own behalf, acknowledged a prior

conviction for a misdemeanor, and others testified as to his general reputation for honesty.

We find no error in the admission of the truncated mug-shots. *State v. Tate, supra.* However, this brings us to the second "question" raised by this appeal.

We perceive the defendant's second question assigns as error the trial court's denial of his motion for mistrial, which was made immediately after this cross-examination of the defendant:

> Q. Now, Mr. Butler, there's been quite a picture painted of you as a good, church-going fellow. In fact, weren't you convicted on March 13, 1970, of the misdemeanor of loitering and prowling, *that had been reduced from burglary?*
>
> A. Yes, sir.

(Italics ours.)

RCW 10.52.030 provides:

> Every person convicted of a crime shall be a competent witness in any civil or criminal proceeding, but his conviction may be proved for the purpose of affecting the weight of his testimony, *either by the record* thereof, or a copy of such record duly authenticated by the legal custodian thereof, or by other competent evidence, *or by his cross-examination,* upon which he shall answer any *proper question* relevant to that inquiry, and the party cross-examining shall not be concluded by his answer thereto.

(Italics ours.)

■ It has been determined that a witness may be examined as to any matter which the record of conviction will show. *State v. Brewster,* 75 Wn.2d 137, 449 P.2d 685 (1969); *State v. Steele,* 150 Wash. 466, 273 P. 742 (1929). In particular, it has been held that the information, which on its face showed that a defendant had been charged with murder, was properly admitted as evidence in a subsequent case, even though the accused had only been convicted of manslaughter. *State v. Ryan,* 192 Wash. 160, 73 P.2d 735 (1937). It is certainly true, of course, that the indictment or information upon which a defendant has been found guilty

is an indispensable part of the record. *State v. Dickey*, 181 Wash. 249, 42 P.2d 790 (1935).

The state contends herein that the original information —even though subsequently replaced by an amended information—is nevertheless a portion of the record which may be utilized to prove the prior conviction. We disagree.

*State v. Dickey, supra*, suggests that the "record" spoken of in RCW 10.52.030 is the "final record" which the clerk of court is required to make pursuant to RCW 10.64.100.[1] We need not, and do not, decide that all the contents of the "final record" would be admissible as proof of the prior conviction. We decide only that an abandoned information which lies in the clerk's files as a useless appendage, and which did not provide the foundation upon which the conviction was based, is not an indispensable part of a clerk's *final* record.

Beyond question, if the misdemeanor of loitering and prowling had been filed under a new criminal case number, instead of as an amended information in the burglary file, the prosecutor could not have asked the defendant if he had previously been informed against for the crime of burglary. The prosecutor had the complete discretion to file a new information or to file an amendment to the previously filed charge. It would be unconscionable to categorize the question as a "proper question" under one circumstance and to deny it under the other circumstance. We hold that the prosecutor's question was not a "proper question" relevant to the defendant's prior conviction.

The more serious question is whether or not it was prejudicial error to have denied the defendant's motion for mistrial based upon the prosecutor's presentation of the improper question before the jury. In passing upon a mo-

---

[1] RCW 10.64.100 provides: "The clerk of the court shall make a final record of all the proceedings in a criminal prosecution within six months after the same shall have been decided, which shall contain a copy of the minutes of the challenge to the panel of the grand jury, the indictment or information, journal entries, pleadings, minutes of challenges to panel of petit jurors, judgment, orders, or decision, and bill of exceptions."

tion for mistrial, the trial court is granted a comparatively .vide degree of discretion. The trial court must ascertain whether or not the moving party was so prejudiced by the alleged error that the prejudice cannot be eradicated except by declaring a mistrial. *State v. Bishop,* 6 Wn. App. 146, 491 P.2d 1359 (1971). In our opinion, the trial court neither abused its discretion nor committed reversible error by denying a mistrial. *See State v. Wilson,* 1 Wn. App. 1001, 465 P.2d 413 (1970). We are satisfied that the average jury would not have found the state's case "significantly less persuasive" had the improper question never been asked nor answered. *Schneble v. Florida,* 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056 (1972).

■ The defendant's third question, in reality, assigns error to the italicized portion (the last sentence) of the following instruction to the jury:

When you go into your jury room to deliberate upon your verdict, while you may discuss the case together and reason with one another, before you make up your verdict, each of you must make up your own mind without reference to the other jurors whether or not the defendant is guilty. The defendant is entitled to an unbiased opinion of each and every juror, and if any juror is not convinced of the defendant's guilt as charged, beyond a reasonable doubt, he should not surrender his opinion thereon for the purpose merely of having an agreed verdict.

In short, when men and women are jurors they sit as individuals so far as their individual verdict is concerned, and each juror should be governed by his own conscience and not by the minds and conscience of his or her fellow jurors.

This instruction does not mean that the jury shall not discuss the evidence with each other before arriving at their conclusions thereon. It means that a juror should not consent to a verdict which he thinks contrary to the evidence out of mere deference to his fellow jurors. *A juror, however, has the right to consider whether a doubt in his mind is a reasonable one which makes no impression on the minds of others, equally honest and equally intelligent with himself, who have heard the testimony*

*out of which the doubt arises, and he may properly change his views because of his consideration.*

(Italics ours.)

The thrust of the defendant's argument is that he is entitled to be tried on the basis of the evidence alone, whereas, the instruction admonishes the jurors to weigh the opinion of other jurors in contradistinction to weighing the evidence. The defendant contends, in his brief, that the italicized portion of the instruction

in substance is nothing more than a solicitation, camouflaged by patronizing language, for opinion change, the mild-mannered being invited to yield in favor of their more opinionated and domineering if not learned, colleagues.

As such, he contends, the instruction contains essentially the same inappropriate language which the court found objectionable in *State v. Ring,* 52 Wn.2d 423, 325 P.2d 730 (1958).[2]

While the contested instruction could have been more aptly worded, we do not find in it the objectionable implication that the juror may consent to a verdict by "surrendering his verdict to the majority." *State v. Johnson,* 53 Wn.2d 666, 335 P.2d 809 (1959). We cannot say the jury was misled in its responsibilities.

Judgment affirmed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied August 10, 1973.

Review denied by Supreme Court October 26, 1973.

---

[2] In *Ring,* at page 427, the court struck down the following language: "*In other words he can properly doubt the correctness of his own opinion, when it is not concurred in by his fellow jurors, and may, without a violation of his oath, consent to a verdict which he would not alone render.*"