**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Ronald Brown WHITMAN,**
**Defendant-Appellant.**

**No. 80–1226.**

United States Court of Appeals,
Tenth Circuit.

Nov. 30, 1981.

Rehearing Denied Jan. 8, 1982.

---

Richard N. Stuckey of Keene, Munsinger & Stuckey, Denver, Colo., for defendant-appellant.

Jeffrey C. Fisher, Asst. U. S. Atty. (Charles E. Graves, U. S. Atty., Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, SEYMOUR, Circuit Judge, and O'CONNOR,* District Judge.

SEYMOUR, Circuit Judge.

Ronald Whitman was convicted after a jury trial on two counts of violating 18 U.S.C. § 1014 [1] by making false statements to a federally insured bank. On appeal, Whitman contends that 1) the indictment was impermissibly amended, 2) a fatal variance occurred between the indictment and the evidence presented at trial, 3) the evidence of intent was insufficient, 4) the jury instruction on the elements of the offense was erroneous, 5) various evidentiary rulings were erroneous, and 6) the prosecutor's closing rebuttal argument was improper. We find these contentions to be without merit and affirm the conviction.

Viewed in the light most favorable to the verdict, *see United States v. Brinklow*, 560 F.2d 1008, 1009 (10th Cir. 1977), the evidence supports the following facts. Whitman owned the L–O–N ranch in Wyoming during the early 1970's. In October 1974, he purchased the Hoagland ranch and assumed liability for Hoagland's outstanding debts to the First National Bank of Rawlins (the bank). Whitman also wanted to acquire the Herold ranch, located next to the Hoagland ranch, because he thought the three contiguous ranches could be operated more profitably as a unit and would make an attractive package to a potential buyer.

---

* Honorable Earl O'Connor, District Judge for the District of Kansas, sitting by designation.

1. Section 1014 provides in pertinent part:
 "Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, ... upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

The bank agreed to finance the purchase of the Herold ranch and to extend Whitman a substantial line of credit to operate the consolidated properties. In negotiating this agreement, Whitman submitted to the bank the financial statement upon which the second count of the original indictment was based. That statement was dated April 17, 1975, and signed by Whitman on April 23, 1975. It was "furnished by [Whitman] for the purpose of obtaining credit from [the] bank from time to time," Rec., vol. II, Pl.Ex. 1.

The financial statement listed as an asset 326 unimproved lots in Tehachapi, California, having a market value of $865,000. This California property had been the subject of several unsuccessful sales agreements between the original owners and Whitman as the potential purchaser. On March 17, 1975, the property was deeded back to the original owners by the nominal grantee shown on the deed, a party other than Whitman, after Whitman failed to make the initial payment due under the relevant sales contract on March 1, 1975. Whitman had no further contact with the original owners after March 17, 1975.

On July 1, 1975, Whitman borrowed another $50,000 from the bank to buy additional bulls for the ranch. Count III of the original indictment was based on the financial statement submitted by Whitman concerning this loan, which also listed the California property as an asset. The combined ranches were ultimately sold to a third party in 1976.

The original indictment contained three counts charging Whitman with knowingly making false statements in violation of 18 U.S.C. § 1014. Included in the description of the false statements were references to property located in Aspen, Colorado, and allegations that Whitman knowingly inflat-ed the value of property in his financial statements.

Prior to trial, the Government elected to proceed only on the charge of making false statements and to drop the charge of overvaluing property. Pursuant to this election and also to conform to the evidence presented at trial, the Government's motion was granted allowing it to dismiss Count I and to strike the references to the Aspen property, inflated value, and the location of the ranch properties.

I.

*The Indictment Issues*

Whitman contends the indictment was impermissibly amended. He argues the trial court misconstrued the statute and therefore permitted deletions which altered the meaning of the indictment from the one presented to the grand jury.

 The court may not amend an indictment except as to matters of form. *United States v. Griffin*, 463 F.2d 177, 178 (10th Cir.), *cert. denied*, 409 U.S. 988, 93 S.Ct. 34, 34 L.Ed.2d 254 (1972). However, withdrawing a part of the charge from jury consideration does not work an amendment if nothing is thereby added to the indictment. *Id.* Withdrawal that narrows the defendant's liability is permissible, *United States v. Hall*, 536 F.2d 313, 319–20 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976), so long as the remaining allegations state an offense and give the defendant notice of the charges he must be prepared to meet. *Griffin*, 463 F.2d at 178.

 Contrary to Whitman's assertion, the deletions in Counts II and III [2] did not change the meaning of the charges from those presented to the grand jury.[3] With

---

**2.** Count I of the original indictment against Whitman was striken completely, and Whitman does not assign that as error on appeal.

**3.** Counts II and III of the original indictment are reproduced below. The material deleted by the trial court is placed in parentheses, so that the indictment presented to the jury consisted of the counts as shown with the parenthetical material omitted.

"COUNT II
"On or about April 23, 1975, in Rawlins, Wyoming, in the District of Wyoming, RONALD BROWN WHITMAN did knowingly make a false financial statement for the purpose of influencing the action of the First

the exception of the references to the location of the ranches, all the omitted language was related to the dropped charge of overvaluation or to the Aspen property. Withdrawing this material from the jury clearly narrowed Whitman's liability. It did not change the meaning of the remaining counts, which both charge that Whitman knowingly made a false financial statement to a federally insured bank for the purpose of influencing the action of the bank regarding the status of loans he had previously assumed. The false statements are identified, the dates are given, and the actions are alleged to have been done to influence the bank or influence deferment of foreclosure. Although not artfully drawn, the final indictment retains all the language of the original relative to the charge of knowingly making a false statement, sufficiently alleges an offense under 18 U.S.C. § 1014, and gives Whitman notice of the charges against him.

Whitman also claims that deletion of the location of the ranches was erroneous. Although the original indictment states that

the lands were located in Carbon County, Wyoming, the evidence presented at trial shows that the lands extend into other counties as well. Nonetheless, this omission does not render the indictment insufficient under the standards articulated in *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir.), *cert. denied*, 429 U.S. 820, 97 S.Ct. 68, 50 L.Ed.2d 81 (1976).

"First, the indictment must contain the elements of the offense and sufficiently apprise the defendant of what he must be prepared to meet; second, it must be such as to show to what extent he may plead a former acquittal or conviction as a bar to further prosecution for the same cause.... And a purpose corollary to the first is that the indictment inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.... Furthermore, and of paramount importance, a sufficient indictment is required to implement the Fifth Amendment guaranty and make clear the charges so as to limit a defendant's jeop-

National Bank of Rawlins, now First Wyoming Bank of Rawlins, Wyoming, the deposits of which were insured by the Federal Deposit Insurance Corporation, regarding the status of loans that had previously been assumed by the said RONALD BROWN WHITMAN (for the purchase of certain ranches located in Carbon County, Wyoming, and in deferring any foreclosure action on said notes and mortgages.)

"The said RONALD BROWN WHITMAN did in connection with said action make a false statement by including in said financial statement, statements that he owned 326 unimproved lots in Tehachapi, California, (having a *market value of $865,000.00, and a* leasehold interest in an Aspen home located in Aspen, Colorado, having the value of $26,000.00 for a total value of $891,000.00) when in fact said RONALD BROWN WHITMAN knew that he did not have an ownership interest (or a leasehold interest) in said property (and that said values on said property were inflated) and that said action was done for the purpose of influencing the bank or influencing the deferment of action by the bank to foreclose said notes and mortgages;

"All in violation of Title 18 United States Code Section 1014.

"COUNT III

"On or about July 1, 1975, in Rawlins, Wyoming, in the District of Wyoming, RONALD BROWN WHITMAN *knowingly made a*

false financial statement for the purpose of influencing the action of the First National Bank of Rawlins, now First Wyoming Bank of Rawlins, Wyoming, the deposits of which were insured by the Federal Deposit Insurance Corporation, regarding the status of loans that had previously been made to the said RONALD BROWN WHITMAN (for the purchase of certain ranches located in Carbon County, Wyoming and to assure the deferring of any action to foreclose said notes and mortgages.)

"The said RONALD BROWN WHITMAN did in connection with said action make a false statement by including in said financial statement, statements that he owned 326 unimproved lots in Tehachapi, California, (having a market value of $865,000.00 and a leasehold interest in an Aspen home located in Aspen, Colorado, having the value of $26,000.00 for a total value of $891,000.00) when in fact said RONALD BROWN WHITMAN knew that he did not have an ownership interest (or a leasehold interest) in said property (and that said values on said property were inflated) and that said action was done for the purpose of influencing the bank or influencing the deferment of action by the bank to foreclose said notes and mortgages;

"All in violation of 18 U.S.C. Section 1014."

ardy to offenses charged by a group of his fellow citizens, and to avoid his conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him."

*Id.* at 562 (citations omitted).

Whitman does not contend he was unable to prepare his defense or was misled by the erroneous factual assertions. The elements of the offense were stated and facts were alleged which, if proved, were sufficient to support the conviction. In view of the specific identification of the dates, the bank, and the nature of the false statements, it is not possible that Whitman was convicted for acts not presented to the grand jury. In sum, we hold that the changes did not constitute an impermissible amendment and that the resulting indictment was sufficient.

■ Whitman argues that even if an impermissible amendment did not occur, a fatal variance existed because the evidence offered at trial differed materially from the facts alleged in the indictment. A variance is fatal when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented by the Government at trial, or when "a conviction based on the indictment would not bar a subsequent prosecution for the same offense." *United States v. Freeman*, 514 F.2d 1184, 1189 (10th Cir. 1975).

■ Whitman makes no allegation that he was prejudiced by an inability to prepare his defense and it is clear from the record that no such prejudice occurred. No claim of surprise was made at trial and no continuance was requested.

■ "[F]or purposes of barring a future prosecution, it is the judgment and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy." *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir. 1974) (citations omitted), *cert. denied*, 421 U.S. 932, 95 S.Ct. 1660, 44 L.Ed.2d 90 (1975). The record in this case eliminates any possibility that Whitman could be reprosecuted for the acts

supporting his conviction. Accordingly, no fatal variance occurred.

## II.

### *Sufficiency of the Evidence of Intent*

■ Whitman contends that the evidence on the element of intent is insufficient as a matter of law. The statute prohibits knowingly making any false statement or report "for the purpose of influencing in any way the action of [a federally insured bank] upon any application, ... commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise ...." 18 U.S.C. § 1014. "[T]he only intent necessary [is] an intent to influence the bank, and not an intent to harm the bank or to profit personally." *United States v. Madsen*, 620 F.2d 233, 235 (10th Cir. 1980) (footnote omitted). Whitman concedes, as he must, that actual reliance need not be proved by the Government in a section 1014 prosecution. *United States v. Tokoph*, 514 F.2d 597, 603 (10th Cir. 1975). However, he urges that the evidence was legally insufficient to show that he made the false statements for the purpose of influencing the bank's action regarding the ranch loans and the extension of his line of credit.

■ The issue of intent is particularly within the province of the jury. *United States v. Goldstein*, 649 F.2d 799, 806 (10th Cir. 1981). Its function is to weigh evidence, draw reasonable inferences therefrom, and evaluate witness credibility. *Id.* In determining whether substantial evidence supports the conviction, we must view the evidence and all its reasonable inferences in the light most favorable to the verdict. *Id.*

The financial statements themselves recite that they were furnished "*for the purpose of obtaining credit* from [the] bank from time to time." Rec., vol. II, Pl. Exs. 1, 2 (emphasis added). Henry Hewitt, the loan officer who handled the Whitman transactions, testified that the April statement "constituted the establishment of the customer's net worth, and was the backbone

of the application . . . ." Rec., supp. vol. II, at 121. Hewitt stated that he and Whitman had extensive discussions about the land in California and that Whitman presented him with several documents to establish its value. *Id.* at 124. Hewitt further testified that the value of the California property as represented in the statements comprised roughly half of Whitman's net worth and that it was a "substantial part of the financial statement." *Id.* at 126. The bank considered foreclosing on part of the collateral before the decision was made to finance the consolidation of the ranches, and the possibility of foreclosure was discussed with Whitman. *Id.* at 127.

In sum, substantial evidence supports the inference that Whitman represented himself as the owner of the California property for the purpose of influencing the bank's action with regard to the complex financial arrangements surrounding the consolidation and operation of the ranches. The false financial statements prevented the bank from making a completely informed decision on these matters. *See Madsen,* 620 F.2d at 234.

### III.

#### The Jury Instructions

Whitman contends that the instructions on the element of intent were erroneous. "The elements of a section 1014 violation include these requisite mental states: knowledge of falsity, and the intent to influence action by the financial institution concerning a loan or one of the other transactions listed in the statute." *United States v. Erskine,* 588 F.2d 721, 722 (9th Cir. 1978) (citations omitted). Whitman argues that the court erroneously failed to instruct the jury that the statements must be made for the purpose of influencing the bank's action on one of the transactions enumerated in the statute: "any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise, or the acceptance, release,

or substitution of security therefor . . . ." 18 U.S.C. § 1014.

The jury was first instructed that it should not single out one instruction but should consider them collectively during its deliberation. The court then read to the jury the relevant parts of section 1014, including the transactions which the defendant must intend to influence. In explaining the essential elements of the charge, the court instructed that the false statement must be made "in connection with obtaining or continuing credit with the bank," Rec., supp. vol. III, at 397, and that "[t]he phrase 'for the purpose of influencing' means that the Defendant intended for the bank to take some action, or defer action, or forestall an inquiry into his credit situation." *Id.* at 398. The court further instructed that the Government alleged Whitman made the false statements "in order to maintain a continuing credit with the Rawlins bank" and "for the purpose of influencing it to maintain his line of credit there, and to defer foreclosure of his property." *Id.* at 397.

We note that "[t]he purpose of § 1014 was to cover all undertakings which might subject the FDIC insured bank to risk of loss," *United States v. Stoddart,* 574 F.2d 1050, 1053 (10th Cir. 1978), and "to protect lending institutions from deceptive practices." *Madsen,* 620 F.2d at 234. The jury instructions taken as a whole are clearly sufficient to describe a violation of the statute.

### IV.

#### Evidentiary Issues

Whitman urges as error the admission into evidence of two loans made to Whitman by other banks, upon which Whitman defaulted. Evidence of other crimes, wrongs, or acts may be admissible under Fed.R.Evid. 404(b) as proof of motive, intent, knowledge, or absence of mistake or accident. *See United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir. 1978). One banker testified that after default the bank could not collect the collateral listed on the

loan application. The other loan was secured by the same 40 bulls that Whitman later listed as unsecured in one of the financial statements at issue here.

[11] Counsel for Whitman attempted to establish at trial that Whitman did not know his financial statements were false, and that he did not have the requisite intent to influence the bank. The evidence of the other loans was probative of intent, lack of mistake, and guilty knowledge. Its admission under Rule 404(b) was a proper exercise of discretion by the trial court, *see Bridwell*, 583 F.2d at 1140, particularly in view of the limiting instruction given by the court.

■ Whitman also contends the judge erroneously ruled his prior felony conviction admissible. Whitman made a motion in limine to exclude evidence of a grand larceny conviction in California resulting from a land fraud scheme. The trial court considered the motion in chambers and ruled that the conviction would be admissible under Fed.R.Evid. 609.[4] As a result, Whitman did not take the stand.

On appeal, Whitman argues that the trial court failed to follow the requirements set forth in *United States v. Seamster*, 568 F.2d 188 (10th Cir. 1978), in making its ruling. In *Seamster*, we said:

"In fixing the conditions under which prior convictions of a witness may be shown to attack the credibility of a witness, Rule 609 refers to two categories: (1) General felonies, and (2) those involving dishonesty and false statement. General felony convictions are admissible only after the trial court has determined that the probative value of the evidence outweighs the prejudicial effect upon a defendant. All convictions involving dishonesty and false statements are admissible as they are considered to affect credi-

bility. When the issue arises, the trial court must first determine into which category of crimes the prior conviction falls."

*Id.* at 190. Here, while the trial judge's analysis of the reasons supporting admissibility of the prior conviction is less than clear, he indicated that the conviction would fall under Rule 609(a)(2) because it related to a land fraud scheme.

In *United States v. Smith*, 551 F.2d 348 (D.C.Cir.1976), a case relied on in *Seamster*, 568 F.2d at 190, the court noted that "if a statutory . . . larceny offense is committed not by stealth, but by fraudulent or deceitful means, *e. g.*, taking by false pretenses, it may qualify as a crime involving dishonesty or false statement." *Smith*, 551 F.2d at 364 n.28. We agree with this reasoning. The trial court did not abuse its discretion in ruling that the prior conviction would be admissible if Whitman chose to testify.

### V.

#### *Defendant's Failure to Testify*

Whitman argues that the prosecutor's closing rebuttal argument contained improper references to Whitman's failure to testify. He also contends the comments were emphasized by the form of the court's instruction on his right to choose not to take the stand.

■ In response to defense counsel's closing argument, the prosecution made three brief references to the "undisputed" evidence. This court has held that such language does not necessarily constitute an improper comment on a defendant's failure to testify. *See United States v. Bishop*, 534 F.2d 214, 219–20 (10th Cir. 1976); *United States v. Blanton*, 531 F.2d 442, 444 (10th Cir. 1976). "[T]he test is whether the language used was manifestly intended or was of such a character that the jury would

---

4. Fed.R.Evid. 609 provides in pertinent part:

"(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprison-

ment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment."

naturally and necessarily take it to be a comment on the failure of the accused to testify." *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir. 1955). Considering the brevity of the comments here with the nature of the evidence to which they referred, we do not believe the jury would necessarily have recognized and construed them as references to Whitman's failure to take the stand. Accordingly, we find no reversible error.

Whitman did not object at trial to the form of the court's instruction on his right to choose not to take the stand. The instruction as given is not plain error. *See Aiuppa v. United States,* 393 F.2d 597, 602–03 (10th Cir. 1968), *vacated on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); *see also, United States v. Southers,* 583 F.2d 1302, 1308–09 (5th Cir. 1978).

The conviction is affirmed.