[No. 6628-9-II.   Division Two.   January 30, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DONALD J. NEWTON, *Appellant.*

PETRICH, J., dissents by separate opinion.

*Stewart A. Johnston* of *Department of Assigned Counsel,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall* and *Barbara L. Corey–Boulet, Deputies,* for respondent.

REED, J.—Donald J. Newton appeals his convictions of forgery and possessing stolen property in the second degree. We affirm.

On March 21, 1982, Newton registered at the Oakwood Motor Lodge in Tacoma under the name Eugene Kellenbenz; he presented a Visa charge card bearing Kellenbenz' name. When he checked out on April 5, 1982, Newton signed Kellenbenz' name to the Visa form. Thereafter, Newton traveled with another person in Kellenbenz' car to Minnesota, during which time Newton increased the Visa card debt to approximately $3,800.

Kellenbenz was reported missing on March 20, 1982. On April 12, 1982, Tacoma police found his badly decomposed body in his apartment. An autopsy determined the death to have been accidental.

During his trial, Newton admitted that he had used the credit card and vehicle, but insisted that Kellenbenz, a personal acquaintance, had given him permission to do so as repayment for a loan. Newton testified that he did not know of Kellenbenz' death until after he had been picked up by police in Minnesota. The jury returned a guilty verdict on one count of forgery and one count of possessing stolen property in the second degree. The court imposed two consecutive 5–year sentences.

The primary issue on appeal concerns the admission into evidence of Newton's prior conviction for third degree theft. Because that offense is punishable by imprisonment for less than 1 year and was offered for impeachment purposes, its admission is governed by ER 609(a)(2), which

requires that the crime involve dishonesty or false statement. In the context of ER 609(a)(2), "dishonesty" is defined to "include only those crimes having elements in the nature of *crimen falsi,* the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully." *State v. Burton,* 101 Wn.2d 1, 10, 676 P.2d 975 (1984).

▉▉ The trial court admitted Newton's prior conviction after taking the matter under advisement and later reviewing the underlying circumstances of that crime and Newton's guilty plea conviction. Newton initially objected to the admission of the prior conviction; he did not object, however, to the trial court's review of the circumstances of that conviction, nor renew his objection to the court's eventual ruling.[1] Rather, Newton permitted the trial judge to review the entire file, including his statement on plea of guilty. In that statement, Newton admitted that he "did wrongfully obtain Russell Crockett's credit card and used it without his consent." Thus, although he was not specifically so charged in the information, Newton actually admitted his guilt of both credit card theft, a felony, RCW 9A.56-.040(1)(c), and third degree theft by color or aid of deception, RCW 9A.56.020(1)(b).[2] In our view it matters not that the information charged generally, in the words of RCW 9A.56.020(1)(a), that the theft was committed by wrong-

---

[1]We do not address the possibility that the failure to object to the inquiry itself waived any objection.

[2]RCW 9A.56.040(1)(c) provides:
"Theft in the second degree. (1) A person is guilty of theft in the second degree if he commits theft of:
" . . .
"(c) A credit card; . . ."
RCW 9A.56.020(1)(b) provides:
"Theft—Definition, defense. (1) 'Theft' means:
" . . .
"(b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . ."

fully obtaining control over the property or services of another. In this we differ from the dissent.

The commission of credit card theft and the use of that stolen card involve dishonesty. *See United States v. Crawford,* 613 F.2d 1045, 1052 (D.C. Cir. 1979). The underlying circumstances of Newton's prior conviction for third degree theft reveal that Newton stole a credit card and assumed a false identity as the card's owner in order to obtain either goods or services through the owner's credit. With the facts of the conviction before him and with no definite authority precluding his use of these underlying facts, the trial judge acted properly in admitting Newton's prior conviction following his determination that the crime involved dishonesty.

Although *State v. Burton*[3] may *suggest* that the trial court can consider only the statutory elements of the crime underlying the impeaching conviction, it does not clearly so hold. Indeed, justification for the trial court's actions in admitting Newton's prior conviction can be found in *Burton.* The *Burton* majority emphasized that, in adopting verbatim the federal version of ER 609, our Supreme Court "indicated our acceptance of the interpretation given to that rule by federal courts." *Burton,* 101 Wn.2d at 9; *see* Comment, ER 609, 91 Wn.2d 1150 (1978). An overwhelming majority of the federal circuits have permitted the type of inquiry that was conducted by the trial court here. *Burton,* 101 Wn.2d at 8. *See United States v. Lipscomb,* 702 F.2d 1049, 1064 (D.C. Cir. 1983); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir. 1982); *United States v. Hayes,* 553 F.2d 824, 827–28 (2d Cir.), *cert. denied,* 434 U.S. 867, 54 L. Ed. 2d 143, 98 S. Ct. 204 (1977); *Government of V.I. v. Toto,* 529 F.2d 278, 281 (3d Cir. 1976); *United States v. Cunningham,* 638 F.2d 696, 699 (4th Cir. 1981); *United States v. Barnes,* 622 F.2d 107, 110 (5th Cir. 1980); *United States v. Papia,* 560 F.2d 827, 847 (7th Cir. 1977); *United States v. Yeo,* 739 F.2d 385, 388 (8th Cir. 1984); *United*

---

[3]*State v. Burton* had not yet been decided when this trial took place.

*States v. Glenn,* 667 F.2d 1269, 1273 (9th Cir. 1982); *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir. 1981).

As stated in *United States v. Hayes,* 553 F.2d at 827:

If the title of an offense leaves room for doubt, a prosecutor desiring to take advantage of automatic admission of a conviction under [609(a)(2)] must demonstrate to the court "that a particular prior conviction rested on facts warranting the dishonesty or false statement description." *United States v. Smith,* [551 F.2d 348, 364 n.28 (1976)].

Also, as stated in *United States v. Papia,* 560 F.2d at 847:

Even the courts that reject the view that stealing, without more, involves "dishonesty" that bears on a witness's veracity recognize that modern theft statutes may encompass criminal conduct that does fall within the ambit of Rule 609(a)(2), for a theft conviction may well be based on fraudulent or deceitful conduct that would previously have been prosecuted as larceny by trick, embezzlement, or the taking of money or property by false pretenses, etc. Accordingly, these courts have adopted the rule that, when the statutory offense of which the witness was convicted does not require proof of fraud or deceit as an essential element of the crime, the prior conviction may yet be admitted under Rule 609(a)(2) if the proponent of the evidence bears the burden of showing that the conviction "rested on facts warranting the dishonesty or false statement description." *United States v. Hayes,* 553 F.2d 824, 827 (2d Cir. 1977), quoting *United States v. Smith,* 551 F.2d 348, 364 n.28 (D.C. Cir. 1976); accord *Government of Virgin Islands v. Toto,* 529 F.2d 278, 281 n.3 (3d Cir. 1976).

Further justification for interpreting ER 609(a)(2) to allow this type of inquiry is found in the very language of the rule. The rule could have provided, but does not, that only those crimes having certain *statutory elements* are admissible. Rather, the rule permits admission of a prior conviction for a crime that "*involved* dishonesty or false statement . . ." (Italics ours.)

Consideration of the actual conduct involved in the commission of the crime underlying the conviction clearly is

consistent with *Burton*'s statement that "[t]he purpose of allowing impeachment by prior conviction evidence is to shed light on the defendant's *credibility* as a witness. Therefore, prior convictions admitted for impeachment purposes must have some relevance to the defendant's ability to tell the truth." *Burton,* 101 Wn.2d at 7. If the underlying circumstances of the crime demonstrate a disregard for truthfulness, then admission of evidence of that conviction fulfills the purpose of ER 609(a)(2).

We conclude, therefore, that the trial court did not err in admitting evidence of Newton's prior conviction for third degree theft under ER 609(a)(2), after inquiring into the circumstances of that conviction.

The next issue that Newton raises concerns the admission under ER 404(b) of Newton's two prior acts of misconduct. The trial court permitted Tawnee Lewis, the girl friend of the man who accompanied Newton to Minnesota, to testify that she received several telephone calls from someone purporting to be Eugene Kellenbenz and that she eventually recognized the voice of the caller as being Newton's. The trial court also permitted Sandra Needhamer, a desk clerk at Nendel's motel in Tacoma, to testify that Newton had registered at Nendel's under his own name on a previous occasion but that he had been locked out because of nonpayment.

■ The admission or refusal of evidence of other crimes or acts lies within the sound discretion of the trial court. *State v. Laureano,* 101 Wn.2d 745, 763–64, 682 P.2d 889 (1984). Under ER 404(b), evidence of other crimes, wrongs, or acts may be admissible for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of prior crimes, wrongs, or acts will be admitted only if it satisfies two criteria. First, the evidence must be shown to be logically relevant to a material issue before the jury. *State v. Saltarelli,* 98 Wn.2d 358, 362, 655 P.2d 697 (1982). Second, if the evidence is relevant its probative value must be shown to outweigh its potential for prejudice. *State v. Saltarelli, supra.*

The balancing of probative value versus prejudice must be done on the record. *State v. Tharp*, 96 Wn.2d 591, 597, 637 P.2d 961 (1981).

Tawnee Lewis's testimony was relevant for the purpose of proving identity—that Newton had assumed the identity of or pretended to be Kellenbenz. Sandra Needhamer's testimony was relevant to proving Newton's motive, that of his need for money with which to pay for his lodging at motels.

The remaining question is whether the trial court properly exercised its discretion by weighing the prejudice to the defendant of this testimony against the relevance of the testimony and whether it did so on the record. The record need only reflect adequate consideration of the potential for prejudice in light of the probative value. *State v. Anderson*, 41 Wn. App. 85, 101, 702 P.2d 481 (1985).

Though the trial court's consideration on the record was not expansive, it was sufficient to indicate that the court did engage in the required balancing of the factors of relevance and prejudice. The trial court found minimal prejudicial effect in the testimony of Tawnee Lewis and found greater relevance in her testimony owing to the unavailability of Kellenbenz as a witness. And, while the court did not, on the record, consider the prejudice of Needhamer's testimony when it made the determination to allow it, the record does reflect, in the court's ruling on Newton's motion for a mistrial, that the court had indeed weighed the prejudicial effect of all the testimony allowed over Newton's objection. Referring to that testimonial evidence, the trial judge stated:

> [I]f [Kellenbenz] were here . . . I would agree . . . that many of these matters would not be admissible because, again, weighing their potential prejudicial value against their probative value, it would be obvious that it would be superfluous. But [Kellenbenz] is not here . . . to testify regarding consent to loan his credit card . . .
>
> It seems to me the only fair way this case can be tried, is by letting the jury know all the circumstances, even though some of them may be, to some small degree, prejudicial. And I do not believe they are grossly prejudicial.

Thus, the record indicates to our satisfaction that the trial court properly exercised its discretion in admitting the testimony of Lewis and Needhamer with the competing values of relevance and prejudice in mind.

Newton also assigns error to the admission into evidence of his police "mug shot." The mug shot was admitted during the testimony of a police officer who had used it along with five other mug shots in a photographic lineup. Newton was identified through his mug shot by an employee at the Oakwood Motel as the person who used Kellenbenz' credit card and by a resident of Kellenbenz' apartment building as the person he saw approaching that building on March 21, the day after Kellenbenz was reported missing. At the time his mug shot was admitted along with the five others, Newton had not conceded that he had signed the credit card charge slip. The issue here concerns the prejudicial effect the police mug shot might have had despite the court's action of having the police identification numbers covered with tape.

Evidence of out–of–court identifications is admissible where the identity of the accused is in issue. *State v. Gibson,* 16 Wn. App. 119, 124, 553 P.2d 131 (1976). When that evidence is a mug shot, caution is warranted because of the extra potential for prejudice. It has been held that when identification numbers have been clipped off and the word "mug shot" is not used in the jury's presence, the use of such photographs is not prejudicial. *State v. Tate,* 74 Wn.2d 261, 267, 444 P.2d 150 (1968). However, it has also been conceded that an ordinary mug shot continues to look like a mug shot no matter how it is disguised. *State v. Butler,* 9 Wn. App. 347, 349, 513 P.2d 67 (1973).

After viewing the mug shots in question, we must agree with the *Butler* court that, even with the identification numbers taped over, they remain mug shots.[4] They disclose

---

[4]That they remain so is particularly apparent in this case because they are so inartfully disguised. They would not pass muster under *Tate* because we cannot say that the State took every precaution to avoid conveying Newton's police

the fact that Newton had a prior arrest because the motel employee who identified Newton from the mug shot did so prior to Newton's arrest for the crimes for which he was on trial.

Any error from the admission of the mug shots, however, does not require reversal. While their admission may not have been absolutely necessary, their relevance to establishing Newton as the person who used Kellenbenz' card and represented himself to be Kellenbenz is undeniable. Moreover, any prejudicial impact from their admission was slight in view of the fact that the jury later became aware of Newton's record by the admission of evidence of his prior conviction. The outcome of the trial would not, within reasonable probabilities, have been different had they not been admitted. *State v. Ferguson,* 100 Wn.2d 131, 667 P.2d 68 (1983).

Finally, Newton raises a double jeopardy issue in his pro se brief. His primary contention is that once he was found guilty of forgery, he automatically was guilty of possession of stolen property in the second degree. Hence, he should be sentenced only once.

■ Double jeopardy exists only if the offenses charged are identical or if one is a "constituent element" of the other. *State v. Roybal,* 82 Wn.2d 577, 581–82, 512 P.2d 718 (1973). Credit card theft and credit card forgery are not identical crimes. *State v. Jefferson,* 11 Wn. App. 745, 747–48, 524 P.2d 924 (1974). Similarly, credit card forgery and possession of a stolen credit card are not identical crimes. RCW 9A.56.160(1)(c) requires only possession of a stolen

---

record to the jury. *Tate,* 74 Wn.2d at 267.

We do not suggest that disguised mug shots may never be used. For example, when such photographs are the only means by which initial pre–arrest identification can be made, and in–court proof of that identification is needed to prove the case against the defendant, their probative value may outweigh any prejudice to the defendant from their admission. This presupposes, of course, that the mug shots are competently disguised and that they are introduced in a manner that does not unduly call attention to their original character. *See, e.g., United States v. Fosher,* 568 F.2d 207, 214 (1st Cir. 1978); *United State v. Harrington,* 490 F.2d 487, 494 (2d Cir. 1973).

credit card. RCW 9A.60.020 requires an intent to injure or defraud, plus either falsely making a written instrument or possessing a forged written instrument. There was no error in imposing separate, consecutive sentences.

The convictions and sentences are affirmed.

WORSWICK, C.J., concurs.

PETRICH, J. (dissenting)—The primary issue in this appeal is the scope of the factual inquiry the trial court makes to determine that a crime involves dishonesty, so as to admit the criminal conviction for impeachment purposes under ER 609(a)(2). The majority extends the inquiry beyond the elements of the offense itself to the circumstances surrounding its commission. The majority concludes that, if the surrounding circumstances of the crime establish dishonest behavior, the offense contains the requisite elements to require admission of the conviction for impeachment. I disagree and must therefore dissent.

The prior crime which the prosecution used to impeach Newton's credibility was a conviction on his plea of guilty to the crime of third degree theft in that he "did then and there . . . wrongfully obtained property of a value of less than $250 belonging to Russell Crockett, with intent to deprive said owner of said property . . ." These acts satisfy the elements of theft as specified in RCW 9A.56.020(1)(a). Because the value of the property did not exceed $250, the offense was theft in the third degree. RCW 9A.56.050.[5]

As the majority points out, dishonesty under the rule is narrowly "defined to include only those *crimes having ele-*

[5]Relying on Newton's statement on plea of guilty, that he "did wrongfully obtain Russell Crockett's credit card and used it without his consent," the majority concludes he admitted his guilt of both credit card theft and theft by color or aid or deception. Such a conclusion is unwarranted. The statement by itself does not include one essential element of each crime namely that the acts were done with intent to deprive the owner of his property. When read together with the elements of the offense as charged in the information and to which he pleaded guilty, theft by color or aid of deception might well be inferred. However, Newton did not plead guilty to, nor was he convicted of, theft by color or aid of deception.

*ments* in the nature of *crimen falsi,* the commission of which involves some element of deceit, fraud, untruthfulness or falsification bearing on the accused's propensity to testify truthfully." (Some italics mine.) *State v. Burton,* 101 Wn.2d 1, 10, 676 P.2d 975 (1984). The *Burton* court concluded that the crimes of theft in general do not contain the requisite element of untruthfulness and are inadmissible under ER 609(a)(2) absent some element of fraud or deceit. The *Burton* court did not elaborate on whether the elements of fraud or deceit must inhere in the elements of the crime itself or whether the court could evaluate the particular conduct of the accused that may have precipitated the charge. The court did, however, confine its inquiry to "crimes of theft in general" and statutory definitions of crimes. *State v. Burton,* 101 Wn.2d at 10. It is clear to me that the fraud or deceit must inhere in the elements of the crime itself.

The majority adopts a broader reading of the federal cases than is warranted. The cases do generally support a factual inquiry into the nature of the offense when the required element of dishonesty is not apparent from the name or title of the offense. *United States v. Cunningham,* 638 F.2d 696, 698–99 (4th Cir. 1981); *United States v. Hayes,* 553 F.2d 824, 827–28, *cert. denied,* 434 U.S. 867 (2d Cir. 1977). The courts in cases cited by the majority have considered the manner and means by which a crime is committed to determine whether it is crimen falsi, but with one exception, they have not indicated that the inquiry should extend beyond the elements of the crime of which the witness stands convicted. *United States v. Lipscomb,* 702 F.2d 1049, 1064 (D.C. Cir. 1983); *United States v. Grandmont,* 680 F.2d 867, 871 (1st Cir. 1982); *Government of V.I. v. Toto,* 529 F.2d 278, 281 n.3 (3d Cir. 1976); *United States v. Barnes,* 622 F.2d 107, 110 (5th Cir. 1980); *United States v. Yeo,* 739 F.2d 385, 388 (8th Cir. 1984); *United States v. Glenn,* 667 F.2d 1269, 1272–73 (9th Cir. 1982); *United States v. Whitman,* 665 F.2d 313, 320 (10th Cir. 1981).

*United States v. Papia,* 560 F.2d 827 (7th Cir. 1977) did permit the court to examine specific facts resulting in a prior conviction for theft, interpreting *United States v. Smith,* 551 F.2d 348 (D.C. Cir. 1976) as allowing an inquiry into the underlying circumstances of the crime.

Such an extension of *Smith* is not warranted. *Smith* noted that when the formal title of an offense leaves room for doubt, the prosecution must demonstrate that the particular prior conviction *rested* on facts warranting such a description of dishonesty or false statement. *United States v. Smith,* 551 F.2d at 364 n.28. A later case from the same court, *United States v. Lipscomb, supra,* noted that federal courts have interpreted footnote 28 in *Smith* to permit an inquiry into the surrounding circumstances of the crime. However, the court in *Lipscomb* also noted that the District of Columbia Circuit Court of Appeals in *United States v. Lewis,* 626 F.2d 940 (D.C. Cir. 1980), following the *Smith* decision, interpreted the scope of inquiry narrowly to require the trial court to confine itself to the elements of the crime. In *United States v. Lewis,* the court stated the following at page 946:

> Contrary to the Government's construction, we do not perceive that it is the *manner* in which the offense is committed that determines its admissibility. Rather we interpret Rule 609(a)(2) to require that the crime "involved dishonesty or false statement" as an *element* of the statutory offense.

I believe the *Lewis* court's interpretation of the rule established by its own court in *Smith* to be persuasive.

I have no quarrel with permitting a factual inquiry into the nature of the offense when the required element of dishonesty is not apparent from the name or title of the offense.[6] If Newton's theft conviction had been based on obtaining control over property of another by color or aid of

---

[6]In her separate opinion in *Burton,* Justice Dimmick criticizes the majority not for its holding but for its suggestion that prior convictions can be categorized as crimes of dishonesty or false statement merely by looking at the *name* of the crime.

deception, with intent to deprive that other person of such property, a statutory alternative under RCW 9A.56.020-(1)(b), the conviction could properly have been used for impeachment purposes. The necessary elements of dishonesty would thus inhere in the crime as charged even though those elements may not be apparent from the name of the crime as third degree theft.

There are two additional reasons why the trial court's inquiry should be limited to the elements of the offense. First, a broad inquiry as allowed by the majority may be cumbersome and time consuming. The trial court would necessarily be involved in resolving issues collateral to the fact of conviction. 5 K. Tegland, Wash. Prac. § 238, at 511–12 (1982). I am persuaded by the logic propounded in 3 J. Weinstein & M. Berger, *Evidence* ¶ 609(04), at 609–75 to –76 (1981), as follows:

> But it is a mistake for the trial court to have to go behind the conviction to determine its details. The statutory definition should control. In this area convenience requires a rather mechanical rule. It is better to rather arbitrarily classify crimes one way or the other and not get into details of a particular conviction, such as whether the witness testified at the prior trial and was not believed or whether the particular assault was based on a dishonest trick luring the victim into an alley.

(Footnotes omitted.) Moreover, this reasoning is consistent with the rule governing the admission of prior convictions for impeachment purposes. The jury is only presented with the fact of conviction, the type of crime, and the punishment, not the underlying circumstances. *State v. Coe,* 101 Wn.2d 772, 684 P.2d 668 (1984); *State v. Gibson,* 32 Wn. App. 217, 220–21, 646 P.2d 786, *review denied,* 97 Wn.2d 1040 (1982).

Second, the majority's approach would broaden the narrow class of crimes contemplated by ER 609(a)(2). *See United States v. Smith,* 551 F.2d at 362; *State v. Burton,* 101 Wn.2d at 8. The majority would permit the use of a conviction for impeachment purposes even though the essential elements of the crime do not involve dishonesty or

deceit so long as the trial court is satisfied that the manner of its commission involves deceitful or dishonest conduct. The practical effect of this ruling is to permit, perhaps even to compel,[7] the use of individual acts of dishonesty to impeach the defendant. Such a rule is unwise.

In my view it was error to permit the introduction in evidence of the prior conviction for impeachment purposes. Such error is of constitutional magnitude since it impinges on the defendant's right to testify in his own defense. *State v. Harris*, 102 Wn.2d 148, 157, 685 P.2d 584 (1984). In order to find such error harmless the appellate court must be satisfied that the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

The test to determine harmlessness of an error of constitutional proportion is the overwhelming evidence test. *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985). Under this test the appellate court looks only at the untainted evidence to determine if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. Here, Newton's sole defense was that Kellenbenz consented to his using the credit card and automobile. Kellenbenz could not testify as to his consent due to his untimely demise. Newton's testimony was the only direct evidence on this issue and his credibility was critical to his defense. The remaining evidence on this issue was not so overwhelming that it necessarily leads to a finding of guilt.

I would reverse and grant a new trial.

Review granted by Supreme Court May 6, 1986.

---

[7] "While ER 609(a)(1) grants discretionary authority to admit prior *felony* convictions, ER 609(a)(2) *requires* the admission of all prior convictions, felony or misdemeanor, which involve a crime of 'dishonesty or false statement'." *State v. Burton*, 101 Wn.2d at 4.