IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 80601-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ABDIJABAR AHMED MOHAMED, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — A jury convicted Abdijabar Ahmed Mohamed of theft of a motor vehicle and second degree identity theft after he appeared on surveillance video taken from inside a stolen minivan. Mohamed appeals the trial court's admission of his driver's license and jail booking photographs as evidence to compare to the surveillance video. Because the trial court did not abuse its discretion in determining the relevance of the photographs outweighed any undue prejudice, we affirm the convictions, but remand to strike the community custody supervision fees from Mohamed's judgment and sentence.

FACTS

Mohammed Salman parked his minivan at a gym and went inside to exercise. He left his wallet with credit cards, recent clothing purchases, and other personal items inside the minivan. When Salman left the gym two hours later, his minivan was missing. Salman called 911 to report the theft.

Citations and pin cites are based on the Westlaw online version of the cited material.

Soon after, Salman received alerts that someone tried using his credit card at a nearby Subway restaurant, gas station, and Bartell Drugs store. A friend drove Salman to those locations to search for the missing minivan. Salman found his van abandoned outside the Subway restaurant. His wallet, a large amount of cash, and various personal items were missing.

Salman called 911 to tell the police that he found his stolen minivan. A police officer responded and began gathering information. The officer looked for latent fingerprints but found none. The minivan appeared undamaged from the theft.

Salman told the officer that the minivan had a two-way video camera attached to the rear-view mirror that records the "front of the car and the inside of the car at the same time." Salman played the video on the camera and obtained still images of the person driving his van. The officer used his phone to take pictures of those images.

Salman gave a detective the minivan video downloaded to a thumb drive. The video consists of three files of about 10 minutes each. Partway through the first file, the video shows a man walk past the front of the minivan, stop, and turn back toward the van. The man opens the driver's door, gets into the minivan, and immediately begins driving. Most of the remaining video shows the man in the van driving. While the video does not focus on the driver's seat, the man's face is often visible coming in and out of the frame. The man looks directly into the camera several times. At the end of the third video, the man pulls into a Subway parking lot, parks, and rummages around in the van, finding a new pair

of shoes. He then leaves the minivan, returns with another man about three minutes later, and continues to rummage through the contents of the van. The video ends abruptly as the man removes the charger from the camera.

The detective took still photographs of the driver's face from the minivan video and sent one to nearby law enforcement agencies for help in identifying the suspect. Several agencies responded, identifying the person driving the minivan as "Abdijabar A. Mohamed."

The detective tried to find surveillance videos from the businesses where Mohamed used Salman's credit cards. Only Bartell Drugs could produce images of Mohamed's purchase. Besides a surveillance video, Bartell Drugs provided transaction details showing the purchase Mohamed made with Salman's credit card.

The State charged Mohamed with one count of theft of a motor vehicle and one count of second degree identity theft. During the jury trial, the State moved to admit Mohamed's driver's license photograph and his jail booking photograph taken shortly after his arrest. The State argued that the photographs were relevant because they would help the jury determine whether Mohamed was the driver of the van by providing clear images of him to compare with the surveillance footage. Mohamed objected to admission of the photographs. He argued that they were unnecessary and that the booking photograph carried a significant risk of undue prejudice. The State agreed to redact the booking photograph to eliminate any indication that it was taken in the jail. The resulting

3

photograph showed Mohamed only from the top of his shoulders upward and was titled, "Photo of Abdijabar Mohamed Taken 5-13-19."

The trial court admitted the evidence. It concluded that the photographs were relevant, admissible, and not unduly prejudicial. Mohamed stipulated that the jail booking photograph pictured him. The State published the two photographs and played the video from Salman's minivan for the jury. The State also showed the jury surveillance video and a still photograph of Mohamed using Salman's credit card at the Bartell Drugs.

The jury convicted Mohamed as charged. The court sentenced him to a standard-range sentence of 19 and a half months. At sentencing, Mohamed asked the trial court to strike the requirement to pay supervision fees from the judgment and sentence because he is indigent. The trial court refused, leaving discretion to impose the fees with the Department of Corrections.

Mohamed appeals.

ANALYSIS

Admissibility of Photographs

Mohamed claims the trial court erred by admitting the two photographs because they were irrelevant, unduly prejudicial, and cumulative. We review a trial court's decision to admit or exclude evidence for abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). A trial court abuses its discretion when a decision is manifestly unreasonable or based on untenable grounds or reasons. Gunderson, 181 Wn.2d at 922.

According to Mohamed, the Department of Licensing and jail booking photographs had little relevance because the jury "was able to compare the driver in the video to Mr. Mohamed himself, who was present in court." The State argues the photographs were relevant to prove the identity of the driver on the video. We agree with the State.

Generally, all relevant evidence is admissible. ER 402. "Relevant evidence" has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The threshold to admit relevant evidence is very low, and even minimally relevant evidence is admissible. State v. Darden, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002).

Here, the defense argued the video did not clearly show that Mohamed was the driver of the minivan. The State offered the photographs to prove that Mohamed was the man pictured in the videos. The photographs assisted the jury by providing known images of the defendant for comparison to the man in the videos. As such, the photographs were relevant to the central question of identity. See State v. Rivers, 129 Wn.2d 697, 711-12, 921 P.2d 495 (1996).

Mohamed contends that the prejudicial effect of the photographs outweighs any probative value because they "primed the jury" to see him in the videos. And he argues that the booking photograph was particularly prejudicial because it also implied that he has a propensity to commit crimes.

The court may exclude relevant evidence

if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ER 403; State v. Scherf, 192 Wn.2d 350, 387, 429 P.3d 776 (2018). For the purposes of ER 403, we assume evidence is relevant and consider only whether its prejudicial effect outweighs the probative value. Carson v. Fine, 123 Wn.2d 206, 222, 867 P.2d 610 (1994). The party seeking to exclude the evidence has the burden of proving unfair prejudice. State v. Burkins, 94 Wn. App. 677, 692, 973 P.2d 15 (1999).

Mohamed claims that showing "both photos of [him] to the jury before playing the video" in court caused the jury to "unconsciously fill the gaps in the low-quality footage with features observed in the photos." At trial, Mohamed argued that admitting the photographs "is basically leading the jury to believe that the individual who is depicted in the video is this individual here." He offered no expert opinion or legal authority in support of his argument. On appeal, Mohamed cites multiple law review articles discussing brain science and cognitive functioning, arguing that the jury had been "primed" by the photographs of Mohamed. But Mohamed's argument still lacks citation to legal authority that applies "priming" in this context.[1] We need not consider issues unsupported by citations to legal authority. State v. Bello, 142 Wn. App. 930, 932 n.3, 176 P.3d 554 (2008); RAP 10.3(a)(6). And Mohamed fails to address how the

---

[1] Generally, "priming" applies in the context of a due process challenge to unduly suggestive procedures used by the police to procure victim or witness identification of a suspect. See State v. Collins, 152 Wn. App. 429, 434-35, 216 P.3d 463 (2009); State v. Vickers, 148 Wn.2d 91, 118-19, 59 P.3d 58 (2002).

photographs would be more likely to "prime" the jury to identify him in the surveillance videos than seeing him in court as the named defendant at trial.

Mohamed also argues the jail booking photograph created " 'extra potential for prejudice' " by implying a past arrest and inviting an inference of criminal propensity.[2]  But "[a] booking photograph is not necessarily prejudicial." State v. McCreven, 170 Wn. App. 444, 485, 284 P.3d 793 (2012).  Admission is proper where identity is at issue and the photograph is redacted to remove the identifiable aspects of a "mug shot."  See State v. Tate, 74 Wn.2d 261, 267, 444 P.2d 150 (1968); State v. Scott, 93 Wn.2d 7, 13, 604 P.2d 943 (1980); McCreven, 170 Wn. App. at 485.  Here, the State cropped the booking photograph so that only Mohamed's face and upper shoulders were visible.

Finally, Mohamed claims the trial court abused its discretion by admitting the photographs because they were unnecessary and cumulative given his presence in the courtroom.  Generally, the prosecution is "entitled to prove its case by evidence of its own choice."  State v. Taylor, 193 Wn.2d 691, 698, 444 P.3d 1194 (2019) (citing Old Chief v. United States, 519 U.S. 172, 186-87, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997)).  The State has the right to present "ample evidence" to prove every element of the crime.  State v. Rahier, 37 Wn. App. 571, 574, 681 P.2d 1299 (1984).  Exclusion of unduly cumulative evidence is appropriate only where the evidence substantially outweighs its probative value. See State v. Price, 126 Wn. App. 617, 644, 109 P.3d 27 (2005), abrogated on other grounds by State v. Hampton, 184 Wn.2d 656, 361 P.3d 734 (2015).  This

---

[2] Quoting State v. Newton, 42 Wn. App. 718, 726, 714 P.2d 684 (1986), rev'd on other grounds, 109 Wn.2d 69, 743 P.2d 254 (1987).

is not the case here. The photographs provided the jury with two other images of Mohamed for comparison to the man in the videos. And the image in the booking photograph showed Mohamed's appearance closer in time to the date the videos were taken. Mohamed fails to show that admission of the two photographs was unduly cumulative.

Supervision fees

Mohamed argues the trial court improperly imposed community custody supervision fees despite a finding of indigence. The State concedes the court should strike this discretionary legal financial obligation from the judgment and sentence. We accept the State's concession. See State v. Dillon, 12 Wn. App. 2d 133, 153, 456 P.3d 1199, review denied, 195 Wn.2d 1022, 464 P.3d 198 (2020).

We affirm Mohamed's convictions for theft of a motor vehicle and second degree identity theft but remand to strike the community custody supervision fees from the judgment and sentence.

_Bunman, J_

WE CONCUR:

_Andrus, A.C.J._

8